UNION BANKERS INS. CO. *v.* NATL. BANK OF COMMERCE
OF PINE BLUFF, EX'R

5-4014                                      408 S.W. 2d 898

Opinion delivered December 5, 1966

*John B. Plegge* and *Perry V. Whitmore*, for appellant.

*Bridges, Young, Matthews & Davis* and *Eugene S. Harris*, for appellee.

OSRO COBB, Justice. On December 3, 1962, William R. Felkins purchased a policy of insurance from appellant purporting to cover certain medical and hospital expenses thereafter incurred by Felkins and his wife.

The annual premium for the policy was substantial—$149.20 for the primary policy and $14.40 for a physician's supplement.

When Felkins applied for this insurance coverage, he set forth as a part of his past medical history that he had suffered from a stomach ulcer which required surgery, and that he had made complete recovery. The company attached two exclusionary riders to the policy.

In 1964 Mr. Felkins developed a jejunal ulcer. Such an ulcer is in an area outside the stomach and within the second portion of the small intestine which extends from the duodenum to the ileum. Felkins was hospitalized and received treatment, including surgery.

In February, 1965, Mr. Felkins was hospitalized for a circulatory embarrassment of the small intestine which resulted from a blood clot in the superior mesentery artery. Radical surgery was again performed. Mr. Felkins did not survive the second operation and appellee, National Bank of Commerce of Pine Bluff, was appointed executor of his estate.

Appellee made seasonable demand upon appellant for policy benefits as to both periods of hospitalization. Appellant denied any coverage and suit was instituted. The case was tried to the court sitting as a jury. The policy was introduced in evidence and proof was made of the exact amount of the hospital and medical expenses alleged to be reimbursable under the provisions of the policy.

Appellant in its answer admitted the issuance of the policy and the payment of all premiums due thereon during the lifetime of W. R. Felkins; admitted the period of hospitalization and made no effort to contest the accuracy of the medical and hospital bills which were offered in evidence. Appellant denied liability upon the contention that the periods of confinement to the hospital were caused or contributed to by physical conditions for which coverage was excluded under the terms of the policy.

Appellant called Dr. Raymond A. Irwin, Jr., general surgeon, Pine Bluff, Arkansas, and Dr. Walter J. Wilkins, Jr., also a surgeon, who testified concerning their treatment of Mr. Felkins and the surgery performed.

Neither side requested written findings of fact by the trial court and the court following hearing entered a judgment for appellee for all sums claimed to be due and owing under the policy, together with statutory penalty and a reasonable attorney's fee. It is from this judgment that appellant brings the appeal, urging that the trial court erred in that it misconstrued or interpreted the provisions of the policy erroneously.

Appellant does not contend that the primary policy did not provide the coverage as claimed by appellee, but insists that the coverage for all claims asserted by appellee was excluded by the provisions of the two riders attached to the policy.

We are therefore required to construe the riders attached to the policy to determine whether the trial court committed error in entering judgment against appellant.

*THE FIRST POLICY RIDER.* We set forth the pertinent language of this rider, as follows:

"* * * the insured agrees to waive any claim for indemnity on account of any loss or disability hereafter sustained which shall be caused or contributed to by *Stomach ulcer* or *any disease or affection of the digestive tract, and/or any complication therefrom* * * *." (Emphasis supplied)

It has long been the established rule of this Court that any intent to exclude coverage in an insurance policy should be expressed in clear and unambiguous language, and the burden is upon the insurance company to present facts at trial that come within the stated ex-

clusion. It has also been an established rule of this Court that any ambiguity in an exclusionary clause must be construed strictly against the insurance company and liberally in favor of the insured. *State Farm Mutual Insurance Company* v. *Baker,* 239 Ark. 298, 388 S. W. 2d 920 (1965).

It is equally well settled that the findings of the trial court sitting as a jury will be sustained if there is any substantial evidence to support them. *Mid-South Insurance Company* v. *Dellinger,* 239 Ark. 169, 388 S. W. 2d 6 (1965).

The ancient rule of ejusdem generis, frequently invoked by this Court, is applicable here. This rule is defined in Black's Law Dictionary, Fourth Edition, as follows:

"EJUSDEM GENERIS. Of the same kind, class or nature.

"In the construction of laws, wills, and other instruments, the "ejusdem generis rule" is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. Black Interp. of Laws, 141; *Goldsmith* v. *U. S.,* C.C.A. N. Y., 42 F. 2d 133, 137; *Aleksich* v. *Industrial Accident Fund,* 116 Mont. 69, 151 P. 2d 1016, 1021. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.

"The maxim "ejusdem generis" is only an illustration of the broader maxim, "noscitur a sociis". *State* v. *Western Union Telegraph Co.,* 196 Ala. 570, 72 So. 99, 100."

In *Jones* v. *State,* 104 Ark. 261, 149 S. W. 56 (1912), this Court approved a terse statement of the ejusdem generis rule, which we quote:

"When general words follow an enumeration of particular things, such words must be held to include only such things or objects as are of the same kind as those specifically enumerated."

See also *Hempstead County* v. *Harkness,* 73 Ark. 600, 84 S. W. 799 (1905).

The stomach is a recognized, primary and essential part of the digestive tract. If it had been the intent of the rider to exclude all diseases and complications of all diseases along the entire digestive tract, it was unnecessary to single out and isolate the stomach as one of multiple parts of the entire digestive tract. To say the least, the language employed in the rider is specific and certain as to the stomach but unclear and uncertain in other respects. We must resolve such uncertainties in favor of the insured.

We have therefore concluded that the effect of this rider was to exclude claims arising solely from ulcers and diseases of the stomach and complications therefrom. Appellee's claim for medical and hospital services which were required because of his jejunal ulcer were properly allowed by the trial court.

*THE SECOND POLICY RIDER.* We set forth the pertinent language of this rider, as follows:

"* * * the insured agrees to waive any claim for indemnity on account of any loss or disability hereafter sustained which shall be caused or contributed to by *any disease or affection of the cardio-vascular-renal system or any part thereof, and/or any complication therefrom* * * *." (Emphasis supplied)

Dr. Walter J. Wilkins, Jr., who was called as a wit-

ness for appellant, testified in part on direct examination as follows:

"Q. Dr. Wilkins, what, in your opinion, was the main reason that Mr. Felkins was hospitalized on February 2nd '65 to March the 1st '65?

"A. Circulatory embarrassment of the small intestine.

"Q. What was this brought about by?

"A. By a blood clot in the superior mesentery artery that provides the circulation to this portion of the digestive system.

"Q. And this is a disease or *malfunction* or infection of the cardiovascular-renal system, is this correct?

"A. It is." (Emphasis supplied)

Dr. Williams testified in part on cross examination as follows:

"Q. Now what caused the clot?

"A. We actually have no proof as to what caused the clot per se, in this particular instance.

"Q. Well then, the loss of circulation which caused these other problems was caused by the clot, but you are not able to say what caused the clot?

"A. In this instance we are not.

"Q. In a general sense is a clot a disease?

"A. Normally that would depend on when a clot forms and why it occurs, whether it's the cause or the effect of the circumstance. A clot that forms when one cuts oneself is a healthy normal reaction and the formation of a clot or the coagulation of the blood is basically not

an abnormal reaction. It's suppose to be a normal function of the body. If a clot doesn't form it's an abnormal reaction, and actually here one would say the formation of a clot is not a disease because one can find clots in other portions, other areas, however, what the clot resulted in is a disease.

"Q. What it resulted in, the clot itself is not?

"A. Yes sir.

"Q. Doctor, when you take the terms digestive system and the cardiovascular-renal system in their broad medical meanings are there any major systems of the body left?

"A. The muscular skeleton system is left and the nervous system."

We note that Dr. Wilkins, during his direct examination, confirmed that the blood clot in this case could have been one of three things—a disease, a malfunction or an infection. However, on cross examination, he stated quite clearly that he was not able to state any cause for the clot and went further to explain that a blood clot could be a normal function of the body. It was established in this case that the blood clot in the superior mesentery artery caused the insured's terminal disabilities and hospitalization. What is totally unclear is the cause of the clot in the first instance. It is certain that Dr. Wilkins did not testify that this clot was caused by a disease of the cardiovascular-renal system. It could have been a malfunction or accident.

We therefore find substantial evidence in the record to support the action of the trial court in entering judgment for appellee for claims asserted under the policy by reason of disabilities and hospitalization resulting from the blood clot.[1]

---

[1] Dr. Wilkins, a witness for appellant, testified that eliminating the entire digestive and cardiovascular-renal systems in their broad

We find no error in the action of the trial court in entering judgment for appellee and the judgment is affirmed.

Affirmed.

Harris, C. J., disqualified and not participating; George Rose Smith, J., dissenting.

medical meanings, the only major systems of the body remaining were the muscular skeleton system and the nervous system. Section 3 of Part 10 of the insurance policy involved in this case specifically excluded any coverage of nervous disorders without demonstrable organic disease. If we had accepted the interpretation of the policy riders insisted upon by appellant, the insured could have been limited as to certainty of coverage to his bones and muscles, and then only if there was no disturbance or complication involving a blood vessel, however minute, in supplying the bone or muscle.