CONTINENTAL CASUALTY COMPANY, a Division of CNA Insurance Company *v.* Keri DIDIER, Don Didier, Paul Hogan, and Johnnie F. Hogan

89-339                                        783 S.W.2d 29

Supreme Court of Arkansas
Opinion delivered January 22, 1990
[Rehearing denied February 20, 1990.]

*Jones, Gilbreath, Jackson & Moll,* by: *Robert L. Jones, Jr.,* and *Charles R. Garner,* for appellant.

*Kirkpatrick and Horan,* by: *Matthew Horan;* and *Stephen Sharum,* for appellees.

DAVID NEWBERN, Justice. This appeal questions whether there was a sufficient factual basis to support the chancellor's decision to reform an instrument evidencing an insurance contract. Also at issue is the insurer's claim for a declaratory judgment to the effect that the policy, due to an exclusionary clause, did not cover liability which might arise because of the

unlawful sale of alcoholic beverages. The chancellor granted reformation on the ground of unilateral mistake of the insured coupled with inequitable conduct on the part of the insurer. The effect of the reformation was to remove the clause excluding liability for liquor sales. We hold the reformation was improper because there was insufficient evidence of mistake. We also hold the insurer was entitled to a declaratory judgment to the effect that the policy did not cover the liability asserted. The decree is reversed and remanded.

Keri Didier, a minor, was seriously injured in an automobile accident on November 5, 1981. The car was driven by Paula Kay Baty, also a minor, who was driving while intoxicated. Keri and his father, Don Didier, sued Paul Hogan and his wife, Johnnie F. Hogan, the owners of Cheers Fort Smith, a liquor store. It was alleged that Baty and other minors had purchased beer and wine at Cheers on the day of the accident without having to show identification to establish their ages.

The actions was removed to federal court. The insurer, appellant Continental Casualty Company, a division of CNA Insurance Company (CNA), declined to defend the suit on the basis that the policy it had issued covering Cheers contained a clause excluding coverage for "personal injury" or "property damage" resulting, "[b]y reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person."

The Didiers and the Hogans entered an agreement by which the Hogans stipulated their liability and agreed to cooperate with the Didiers in pursuing their claim against any third party including insurers. In return, the Didiers agreed not to pursue any judgment they might get against the Hogans. Based on a stipulation, the federal court entered judgment in favor of the Didiers and against the Hogans for $351,546.73.

The Didiers and the Hogans then brought an action in Sebastian County Circuit Court against CNA and Brown-Hiller-Clark, the insurance agency which had sold the Hogans the policy in question. One of the counts sought reformation of the policy. That count was transferred to chancery court. CNA counter-claimed for a declaratory judgment to the effect that the policy

did not cover the asserted liability.

The chancellor found that Paul Hogan was mistaken in thinking that he had an "all risk" insurance policy and that his mistake had been induced by inequitable conduct on the part of CNA. The chancellor granted reformation of the policy. The decree provided that, "[i]n the event the policy cannot be reformed," CNA's claim for declaratory judgment should be denied because the policy could be interpreted as providing coverage. As its reason for the alternative holding denying CNA's declaratory judgment claim, the decree stated that the policy attempted to exclude "personal injuries" as opposed to "bodily injuries" resulting from liquor sales, thus permitting the conclusion that a narrower class of injuries was excluded. The decree mentioned other issues to be determined in the action remaining in circuit court but stated, presumably to comply with Ark. R. Civ. P. 54(b), that there was no just reason for delay in entering the chancery decree. CNA has appealed.

### 1. Reformation

Upon purchasing a building in Fort Smith in which to locate his liquor store, Paul Hogan called Larry Clark, an insurance agent with whom he had previously done business. He told Clark he needed a binder right away to give to the bank which was to be his mortgagee. Clark had brochures from CNA describing a "Business Account Policy" which was available in two forms, basic coverage and "broad form." Clark testified that he wanted to get a "deluxe policy" for Hogan, and the literature had not made him aware of the liquor sales exclusion. He wrote a binder for the broad form.

An advertisement sent by CNA to agents was introduced as an exhibit. It described the business coverage policy and stated, "everything you need to present, rate, quote and bind coverage is now in your hands." It listed types of businesses for which the policy would not be available, and liquor stores were not listed. It noted "liquor and wine" as a category of business for which the policy was available but stated that category would be eligible for basic coverage only.

The cover of another brochure was also introduced. It described the policies and noted that "The Broad Plan offers

protection for all perils except the ones excluded in the policy."

Clark had not sold this type of CNA policy previously. He wrote the binder for Hogan on the basis of the literature without seeing the policy. He testified that when the policy was received later he delivered it to Hogan or the manager on the premises at the liquor store. Hogan testified he could not remember receiving a copy of the policy.

Upon receiving the policy Clark became aware of the exclusion for liability based on liquor sales. He tried to get CNA to waive the exclusion. He tried to place the liquor sales coverage with other companies, including specialty companies, without success. He finally induced AETNA to agree to issue the coverage upon the date the policy would have been renewed with CNA, but by then the accident had occurred, and the Hogans had sold the business.

The basis stated in the chancellor's decree for his finding of inequitable conduct on the part of CNA is the CNA literature describing the coverage as "all risk" and the failure of the company to inform Hogan, either directly or indirectly, of the exclusion. The decree states that Hogan was mistaken about the coverage afforded. The basis for that finding apparently was that Hogan expected coverage for liability resulting from illegal liquor sales.

There is no evidence to support the finding that Hogan was under a mistaken impression about the insurance he was buying. He had once sold insurance for Allstate for over two years and was familiar with the insurance business. The strongest statement in his testimony is that he "wanted liability coverage and property insurance, whatever you need to cover your liability from whatever standpoint." He did not state that he thought he had been insured against any risk resulting from illegal liquor sales.

A written instrument may be reformed if there has been a mistake of one party accompanied by fraud or other inequitable conduct of the other or remaining parties. *Turney* v. *Roberts*, 255 Ark. 503, 501 S.W.2d 601 (1973). *See also Arnett* v. *Lillard*, 245 Ark. 939, 436 S.W.2d 106 (1969). The evidence must be clear and convincing. *Hervey* v. *College of the Ozarks*, 196 Ark. 481, 118 S.W.2d 576 (1938). *See also Turney* v.

*Roberts, supra.* A mistake is a state of mind not in accordance with the facts. *Restatement of Restitution,* § 6 (1937); D. Dobbs, *Remedies,* § 11.2 (1973). In Arkansas there is no civil liability resulting from the illegal sale of liquor. *Rone* v. *H.R. Hospitality, Inc.,* 297 Ark. 107, 759 S.W.2d 548 (1988); *Carr* v. *Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965). A policy holder has a duty to educate himself concerning his insurance. *Howell* v. *Bullock,* 297 Ark. 552, 764 S.W.2d 422 (1989). Given Hogan's experience as an insurance agent, to say nothing of his duty to investigate his coverage, it is most unlikely that he even contemplated such liability, much less that he assumed his policy covered it. His testimony that he "wanted" liability coverage from every standpoint is clearly insufficient to show his state of mind was inconsistent with the facts.

We need not discuss whether CNA's conduct can be considered to have been inequitable because we find the chancellor's conclusion that Hogan was mistaken to be clearly against the preponderance of the evidence. *See* Ark. R. Civ. P. 52(a).

### 2. Declaratory judgment

Given our reversal of the reformation portion of the decree, CNA was entitled to a declaration that the policy did not cover the liability asserted here.

The general liability section of the policy provides coverage for injury to a third party for personal injury caused by an "occurrence." The policy defines "occurrence" as, "an accident . . . which result[s] in bodily injury . . . or . . . personal injury." "Bodily injury" is defined in part as, "bodily injury, sickness or disease sustained by any person which occurs during the policy term. . . ." "Personal injury" is defined as follows:

> PERSONAL INJURY means bodily injury and other injury arising out of any of the following acts if first committed during the policy term:
>
> 1.   False arrest, detention, imprisonment, or malicious prosecution.
>
> 2.   Wrongful entry or eviction or other invasion of the right of private occupancy of an occupant.
>
> 3.   A publication or utterance

    (a)   of a libel or slander or of other defamatory or disparaging material.

    (b)   in violation of an individual's right to privacy.

4.  Piracy, infringement of copyright, title or slogan in the course of Your advertising activities.

The exclusionary language of the policy was:

We will not pay for any of the following Personal Injury or Property Damage to or resulting from.

. . . .

5.  Damages resulting from Your operation or the operation of someone else from whom You have assumed liability and may be held liable:

    a.   As a person or organization engaged in the business of manufacturing, distributing, selling or serving of alcoholic beverages, or

    b.   If not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed:

        (1)   Because of violation of any statute, ordinance or regulation regarding the sale, gift, distribution or use of alcoholic beverages.

        (2)   By reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person.

In his decree the chancellor stated that CNA's petition for declaratory judgment should be denied because the policy could be interpreted as granting coverage. He noted further, "CNA's attempt to exclude 'personal injuries' as opposed to 'bodily injuries' permits the conclusion that a narrower class of injuries were excluded." Because "bodily injury" is specifically included in the policy's definition of "personal injury," we cannot agree with the chancellor's conclusion.

There is ambiguity in the policy definition of "personal injury" when it is viewed out of context. It could mean "bodily injury" limited to that arising from the "following acts" listed in the definition. On the other hand it could mean "bodily injury," as separately defined in the policy, and, in addition, "other injury arising out of the [listed] following acts." However, in the context of the clause excluding liquor sales liability, we have no doubt the term "personal injury" includes "bodily injury" as defined in the policy. That is so because it is so unlikely that "bodily injury," if it were limited to that arising from false arrest, wrongful entry, publications, etc., could have anything to do with the sale of liquor. The kind of liability likely to arise from liquor sales is precisely the kind which might have arisen in this case had Arkansas law provided it, which it did not.

We do not quarrel with the cases cited by the Didiers and the Hogans to the effect that an ambiguous insurance policy is interpreted in favor of the insured; however, we will not indulge in a forced construction outside the intent of either party. *Mercury Ins. Co.* v. *McClellan*, 216 Ark. 410, 225 S.W.2d 931 (1950); *Habaz* v. *Employers Fire Ins. Co.*, 243 F.2d 784 (8th Cir. 1957). We consider the whole policy to determine the meaning of the clause in question. *Continental Casualty Co.* v. *Davidson*, 250 Ark. 35, 463 S.W.2d 652 (1971); *Fowler* v. *Unionaid Life Ins. Co.*, 180 Ark. 140, 20 S.W.2d 611 (1929). Given the separate definition of "bodily injury," the inclusion of that term in the policy's definition of "personal injury," and the fact that "bodily injury" is unlikely to occur in the categories of "other injury" listed in the exclusionary clause, we conclude the intent of the policy was to exclude liability for "bodily injury" resulting from liquor sales.

Reversed and remanded.

GLAZE, J., concurring.