**Bruce NORTON and Linda Norton, Husband and Wife, Appellants,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellee.**

No. 89–2194.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 17, 1990.

Decided May 11, 1990.

**1356**

C. Mac Norton, Pine Bluff, Ark., for appellants.

Brian Brown, Little Rock, Ark., for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Bruce and Linda Norton appeal from the magistrate's[1] order granting summary judgment in favor of the defendant, the St. Paul Fire and Marine Insurance Company (St. Paul). The magistrate concluded that damage to the Nortons' recreational vehicle (RV) caused by a windstorm was excluded from coverage under their insurance policy with St. Paul because the damage occurred while the RV was being used as a "permanent residence." We reverse and remand.

### I.

The facts are not in dispute. The Nortons, residents of Arkansas, insured their 1985 Coachman Classic RV through a policy issued by First Arkansas Insurance of Pine Bluff, Arkansas, an independent agency authorized to write such policies on behalf of St. Paul, a Minnesota corporation. The policy term was from July 25, 1988 through July 25, 1989. In late May or early June 1988, the Nortons lent the RV to their daughter, who was beginning a new job and establishing a residence in Yukon, Oklahoma. Prior to borrowing the RV, the daughter had lived for several months at the home of her fiance's parents in Yukon. In late May 1988, she and her fiance rented a two-acre tract outside Yukon, intending to purchase a mobile home to place on the property. Because they could not immediately purchase a mobile home due to budget limitations, they arranged to borrow the Nortons' RV to place on the rented property. The parties agree that the RV would not have remained on the property for more than five months. The RV was to be returned to the Nortons no later than early October so they could use it for a trip they had planned.

Because a mobile home had previously been situated on the rented property, the requisite utility hookups were already in place. By early June 1988, the RV was connected to the electricity and telephone hookups, and a water hose was connected to a well faucet. There was a large gas tank on the property, but the tanks on the RV were sufficient for the daughter's use. The RV was neither tied down nor blocked up.[2]

The Nortons' daughter used her fiance's parents' address for all of her mail and for her checking account. As of August 19, 1988, she had neither applied for an Oklahoma driver's license nor registered to vote in the state. She kept all of her clothes and personal belongings in the RV. Her dogs were kept in a pre-existing chain link enclosure on the property. From late May or early June 1988 to August 19, 1988, when the RV was damaged, the daughter spent approximately ninety percent of her nights in the RV. Her fiance resided with his parents at all times. The daughter had no other principal residence and had no

---

1. Pursuant to 28 U.S.C. § 636(c)(1) (1982), the parties consented to entry of judgment by a magistrate.

2. In her deposition, the Nortons' daughter explained why these measures were not taken: "[T]he main reason is we didn't think [the RV] would be there over a few months.... A couple of months at the most. And, also, in that area the wind is so strong that it's not recommended to tie down RV trailers even for short periods of time."

intention of moving back to either of her previous Arkansas residences. Beginning no later than late May 1988, she and her fiance actively shopped for a mobile home, ultimately purchasing one in November 1988.

On August 19, 1988, the RV was severely damaged when it was blown over by a windstorm. The RV was sold for salvage and the Nortons sought recovery for the loss from St. Paul. After initially assuring the Nortons that a settlement check was forthcoming, St. Paul denied recovery pursuant to a policy clause excluding coverage for losses that occur while the RV is "used as a permanent residence." The First Arkansas agent who issued the policy wrote a letter to St. Paul's claims department, criticizing its handling of the claim and expressing his view that the Nortons' daughter had not been using the RV as a permanent residence. The Nortons then brought an action in Arkansas state court, seeking $10,400 under the policy for loss to the RV, other damages resulting from St. Paul's alleged breach, and punitive damages. The case was removed to federal court, where the parties filed cross-motions for summary judgment on the issue of coverage under the policy. In addition to relying on the permanent residence exclusion, St. Paul asserted that the policy limits coverage to use of the RV for "recreational purposes," as defined in the policy. The Nortons contended that the term "permanent residence" is ambiguous, and therefore the exclusion must be strictly construed against St. Paul. The magistrate granted summary judgment for St. Paul on the ground that the Nortons' daughter was using their RV as a permanent residence at the time of loss. The magistrate reasoned that the term "permanent residence" is not ambiguous because the word "recreational" is used to describe the insured vehicle throughout the policy, evidencing an intent to insure the vehicle when used for "recreational purposes," as defined in the policy, in contrast to use as a principal abode for any length of time.

## II.

■ Summary judgment under Fed.R. Civ.P. 56 is appropriate in this case. As was noted, there are no material facts in dispute. The parties agree that Arkansas law applies in this diversity action. Since the meaning of the policy language at issue does not depend upon disputed extrinsic evidence, the "construction and legal effect" of that language is a question of law. *Southall v. Farm Bureau Mut. Ins. Co.*, 276 Ark. 58, 632 S.W.2d 420, 421 (1982); *see also Enterprise Tools, Inc. v. Export–Import Bank*, 799 F.2d 437, 439 (8th Cir. 1986) (whether insurance contract is ambiguous is a question of law), *cert. denied*, 480 U.S. 931, 107 S.Ct. 1569, 94 L.Ed.2d 761 (1987).

■ In general, we accord substantial deference to a district court's interpretation of the law of the state in which it sits. *St. Paul Fire & Marine Ins. Co. v. Rock–Tenn Co.*, 787 F.2d 340, 341 (8th Cir.1986). We are not, however, bound by the district court's determination and will reverse if we conclude that the court has not correctly applied state law. *Id.* Moreover, in the absence of state precedent addressing the issue presented, the interpretation of a written contract's terms does not represent an "application of state law in which we must pay some deference to a district court's expertise." *In re Romine*, 556 F.2d 895, 897 (8th Cir.1977).

■ There are no Arkansas decisions addressing the specific policy language at issue in this case. Nor, apparently, are there any such decisions from other jurisdictions. However, the general principles of insurance policy construction are well settled in Arkansas. *See Foremost Ins. Co. v. Sheppard*, 610 F.2d 551, 554–55 (8th Cir.1979). Under Arkansas law, "any intent to exclude coverage in an insurance policy should be expressed in clear and unambiguous language." *Union Bankers Ins. Co. v. National Bank of Commerce*, 241 Ark. 554, 408 S.W.2d 898, 900 (1966). The established rule in Arkansas is that "any ambiguity in an exclusionary clause must be construed strictly against the insurance company and liberally in favor of the insured." *Id.; see also Foremost*, 610

F.2d at 555 (recognizing rule). All reasonable doubts as to interpretation must be resolved in favor of the insured. *State Farm Mut. Auto. Ins. Co. v. Traylor*, 263 Ark. 92, 562 S.W.2d 595, 596 (1978); *see also Aetna Casualty & Sur. Co. v. Stover*, 327 F.2d 288, 290 (8th Cir.1964) (under Arkansas law, "if a reasonable construction can be placed on the [insurance] contract that would justify recovery, it is the duty of the court so to construe it"). "This is especially so in a case such as this where the insured had no part in the preparation of the contract." *Ross v. Royal Globe Ins. Co.*, 612 F.2d 379, 381 (8th Cir.1980) (applying Arkansas law). A term in an insurance policy is ambiguous if it is "susceptible to more than one equally reasonable construction." *Wilson v. Countryside Casualty Co.*, 5 Ark.App. 202, 634 S.W.2d 398, 399 (1982); *accord Enterprise Tools*, 799 F.2d at 439. In order to determine whether a particular clause is ambiguous, the court must consider the clause in light of the entire policy. *Continental Casualty Co. v. Didier*, 301 Ark. 159, 783 S.W.2d 29, 32 (1990). If at all possible, the policy must be construed to give effect to all its provisions. *Continental Casualty Co. v. Davidson*, 250 Ark. 35, 463 S.W.2d 652, 655 (1971).

The exclusionary clause invoked by St. Paul, contained in a list of damage exclusions, reads as follows: "We will not pay for ... 9. Loss to your 'covered recreational vehicle' while it's used as a permanent residence." As the magistrate recognized, the issue under this clause is not whether the Nortons' daughter intended to establish the rented property on which she placed the RV as her permanent residence. Rather, the issue is whether the RV itself was being used as a permanent residence at the time of loss.

■ The term "permanent residence" is not defined in the policy. Although seemingly plain on its face, the term is ambiguous when applied to the facts of this case. Clearly, the Nortons' daughter was using the RV as a residence. The Nortons do not contend otherwise. This use, however, was temporary in that it was for a definite, strictly limited time period. By contrast, the word "permanent" signifies lasting duration. Read broadly, it might also include an indefinite time period, but certainly not a definite one. Given all this, the exclusion can reasonably be construed as not encompassing the Nortons' daughter's use of their RV. We find that this construction, which attaches at least some significance to the word "permanent," is as reasonable as one which includes within the exclusion use of the RV as a residence for a limited time period not to exceed five months. Moreover, if St. Paul had intended to exclude coverage in the situation presented here, it should have expressed that intent "in clear and unequivocal terms in its policy." *MFA Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 268 Ark. 746, 595 S.W.2d 706, 709 (Ct.App.1980).[3]

Standing alone, the term "permanent residence" is ambiguous as applied to the facts here, and it remains so when viewed in light of the entire policy. Relying on the use of the word "recreational" to describe the insured vehicle throughout the policy, and the policy provisions relating to "recreational purposes," *see infra*, the magistrate reached the following conclusion:

> [W]hen the entire policy is read as a whole, the intent to insure recreational use is adequately evident to allow the term "permanent residence" to be construed using plain meaning. The plain meaning of "permanent residence" as used in the policy is similar to that of primary residence, i.e., the principal place where one lives from day to day, eats, sleeps, and keeps their belongings. The definiteness of the term of occupation is unimportant.

This interpretation gives absolutely no effect to the word "permanent." Furthermore, it attributes exclusionary force to the purely definitional provisions concerning "recreational purposes," a strained reading

---

**3.** The magistrate suggested that, instead of "permanent residence," St. Paul could have used the term "sole residence," "primary residence," or possibly "principal residence." The Nortons maintain that St. Paul could have used language such as "temporary or permanent residence."

that is not necessary in order to give those provisions effect. Therefore, the magistrate's interpretation of the policy, which St. Paul urges us to accept, must be rejected for "[w]hen one construction of a policy excludes certain provisions, and another gives effect to all provisions, the construction giving effect to all provisions is the one to be adopted." *Arkansas Kraft Vendors v. Horton,* 15 Ark.App. 123, 690 S.W.2d 370, 372 (1985) (citing *Davidson,* 463 S.W.2d at 655).

An examination of the policy's use of the terms "recreational purposes" and "recreational vehicle" reveals that these terms merely describe the types of vehicles covered by the policy. They cannot reasonably be construed as expressing an intent to further limit the range of covered uses beyond the limitations set forth in the listed exclusions. In a section with the heading "Definitions," the policy states that "'Recreational Purposes' means use of a vehicle for vacation travel or leisure time activities not connected with any business or occupation of any insured." The policy is entitled "Recreational Vehicle Insurance Policy," and the "Definitions" section divides such vehicles into five classes. The Nortons' insured vehicle was a "Class IV Recreational Vehicle," which is defined as

a trailer that is under 35 feet in length and is designed to be towed by a private passenger car, station wagon, van or pick-up, provided such vehicle is equipped with living facilities and *is used for recreational purposes* (emphasis added).

Significantly, this definition does not provide that the vehicle is or must be used *exclusively* for recreational purposes. Indeed, the magistrate found that "[t]he [recreational purposes] language appears to intend to distinguish the vehicle from those types of vehicles primarily [sic] for commercial purposes." Except for its incorporation into the policy's definitions of three other classes of recreational vehicles,[4] the term "recreational purposes" appears in no other pertinent portion of the policy. Against this definitional background, we would have to apply a decidedly forced construction in order to find that the policy's repeated use of the term "recreational vehicle" to refer to the insured vehicle[5] has any bearing on the scope of coverage afforded that vehicle. Therefore, contrary to the magistrate's interpretation, we conclude that this term does not combine with the definition of "recreational purposes" to remove all reasonable doubt as to the meaning of "permanent residence."

We likewise reject St. Paul's argument that, independent of the permanent residence exclusion, the policy excludes coverage for uses of the RV not falling within the definition of "recreational purposes." This interpretation effectively renders the permanent residence exclusion meaningless because it is difficult to conceive of situations in which an RV would simultaneously be used for vacation travel or leisure time activities and as a *permanent* residence.[6] Moreover, if the definition of "recreational purposes" was actually intended to operate as an exclusive list of insured uses, St. Paul should have so stated in the policy, especially since one can imagine any number of uses of an RV which do not come

---

**4.** The definition of a Class III recreational vehicle, a detachable unit equipped with living facilities that is designed to be mounted on a pick-up truck or station wagon, also includes the phrase "is used for recreational purposes." By contrast, Classes I and II are both defined in pertinent part as "a motor vehicle ... *designed for use* on or off the public roads *for recreational purposes.*" It is even more questionable to construe this language as further limiting the range of covered uses, yet the exclusion for use as a permanent residence also applies to these classes of recreational vehicles. The definition of a Class V recreational vehicle, a motorized two-wheeled vehicle, does not even contain the term "recreational purposes."

**5.** The policy refers to the insured vehicle as "'your covered recreational vehicle'" in virtually every instance. In the "Definitions" section, the policy provides in relevant part that this phrase means "[a]ny vehicle shown in the Declarations."

**6.** St. Paul's interpretation also makes superfluous the exclusion for "[l]oss to [the insured RV] which occurs while it is used to carry persons or property for a fee."

under this definition.[7]

The explanation of insured RV uses offered by St. Paul at oral argument demonstrates that in the final analysis its position depends upon the existence of an independent exclusion drawn from the definition of "recreational purposes." According to St. Paul, the RV can be used as a residence for any length of time so long as it is also being used for recreational purposes. Thus, under St. Paul's interpretation, coverage clearly exists when the RV is being used as a residence during a months-long vacation, even if it is parked in one location the entire time. Indeed, St. Paul conceded that the loss in this case "theoretically" would have been covered if the Nortons' daughter had been engaged in recreational activities, such as playing golf every day. This necessarily implies that she was not in fact using the RV as a "permanent residence"; at the least, it tends to confirm that term's ambiguity when applied to the facts of this case.

■ We recognize that "[t]he terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." *Southern Farm Bureau Casualty Ins. Co. v. Williams*, 260 Ark. 659, 543 S.W.2d 467, 470 (1976). However, St. Paul does not identify, and we cannot ascertain, a basis for concluding that the risk of loss associated with the Nortons' daughter's use of the RV is any greater than the risk associated with use of the RV as a residence during a months-long vacation. The latter risk is one which St. Paul states is clearly included within the policy's coverage. The policy certainly does not plainly exclude that same risk of loss whenever a recreational purpose is lacking.

### III.

We conclude that the Nortons' insurance policy with St. Paul covers the loss to their RV. As applied to the undisputed facts of this case, the policy's exclusion for use as a "permanent residence" is ambiguous. The exclusion must therefore be construed in favor of the Nortons under Arkansas law. Furthermore, the policy does not limit coverage to uses falling within its definition of "recreational purposes." Accordingly, the magistrate's order is reversed and the case remanded for entry of summary judgment for the Nortons on the issue of coverage.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. Because I agree with the magistrate that the contract language is unambiguous when read as a whole, I would affirm.

While the majority correctly states the applicable law of contract interpretation, it is worth repeating here. When deciding whether a particular clause in a contract is ambiguous we must consider the entire contract. *Continental Casualty Co. v. Didier*, 301 Ark. 159, 783 S.W.2d 29, 32 (1990) (*Didier*). This is so because it is impossible to give effect to the intent of the parties by focussing only on a single word or phrase and ignoring what is contained within the four corners of the document. *See id.; see also Pate v. United States Fidelity & Guar. Co.*, 685 S.W.2d 530, 532 (Ark.App.1985) (*Pate*). Although an ambiguous insurance policy is to be interpreted in favor of the insured, every effort must be made to give effect to the intent of the parties. *Didier*, 783 S.W.2d at 32. An ambiguity exists only if the provision is susceptible to two equally reasonable interpretations. *Pate*, 685 S.W.2d at 532. While the provision standing alone may be susceptible to different interpretations, an examination of the entire policy may reveal that only one interpretation is reasonable. *Id.* When that happens the reasonable construction must be followed, and the doctrine calling for the resolution of ambiguities in favor of the insured is inapplicable. *See Didier*, 783 S.W.2d at 32; *Pate*, 685

---

**7.** Indeed, undermining its own interpretation of the definition's effect, St. Paul conceded at oral argument that an RV is covered under the policy when, for instance, it is simply parked in the insured's backyard, even though the RV obviously is not being used for recreational purposes.

S.W.2d at 532 (interpreting exclusion clauses against the insured).

The magistrate held that the language in the policy referring to the insured vehicle as a "recreational vehicle" used for "recreational purposes" removes any ambiguity in the clause excluding coverage while the vehicle is used as a "permanent residence." The magistrate concluded that the contract as a whole indicates that the parties intended to exclude coverage while the vehicle is used as a principal abode, as it was in this case. The majority, on the other hand, holds that the exclusion clause is latently ambiguous and that the references in the policy to "recreational purposes" and "recreational vehicle" shed no light on the ambiguous language. I disagree with the majority. Admittedly, it is difficult to discern from the term "permanent residence" whether the exclusion encompasses use of the insured vehicle as a residence for a fixed, five-month period.[1] However, I believe that the answer can be found elsewhere in the contract. In my view, the majority, in rejecting the significance of language found elsewhere in the contract, too readily turns to the canon of construction resolving ambiguities against the drafter in favor of the insured.

The insurance contract at issue is entitled "Recreational Vehicle Insurance Policy" and covers damages resulting from a "recreational vehicle accident." It specifically excludes coverage "while '[the insured's] covered recreational vehicle' is used as a permanent residence." The policy establishes five classes of covered recreational vehicles. The Nortons' vehicle was categorized as a Class IV Recreational Vehicle which the policy defines as "a trailer that is under 35 feet in length and is designed to be towed by a private passenger car, station wagon, van or pickup, provided such vehicle is equipped with living facilities and is used for recreational purposes."[2] After examining the exclusion provision in the context of the entire policy, including the definition of a Class IV vehicle, I am convinced that the exclusion encompasses use of the vehicle as a residence for a fixed, five-month period.

The majority expresses concern that reliance on the language referring to "recreational purposes" and "recreational vehicle," which is mostly found in the definitions section of the policy, attributes exclusionary force to purely definitional provisions. The majority also believes that these references have no bearing on the scope of coverage afforded the vehicle and that to attach any significance to them is a forced construction of the insurance policy. I disagree. Merely because the "recreational" language is found in the definitions section of the contract does not preclude it from shedding light on the ambiguity surrounding the term "permanent residence." Furthermore, the "recreational" language is by no means limited to the definitions section of the contract. Indeed, the very exclusion clause at issue refers to the insured's "covered recreational vehicle" which, in the Nortons' case, means a trailer that is used for recreational purposes.

For these reasons, I would affirm the order of the magistrate granting summary judgment in favor of St. Paul.

---

1. The ambiguity is not in the use of the term "residence" since there can be no doubt that the Nortons' daughter was using the vehicle as her residence when the damage occurred. Rather, the ambiguity arises when the term "permanent residence" is applied to the fact that she only planned to reside in the vehicle for five months.

2. The majority believes that this definition does *not* provide that a Class IV vehicle must be used *exclusively* for recreational purposes. I do not entirely agree with the majority's assessment. I think the only fair interpretation of this definition is that a vehicle is not a Class IV recreational vehicle when it is used for non-recreational, or residential, purposes.