**Monty A. THACKER, Plaintiff,**

v.

**ARKANSAS BLUE CROSS AND BLUE SHIELD, Defendant.**

**Civ. No. 90–6069.**

United States District Court,
W.D. Arkansas,
Hot Springs Division.

April 11, 1991.

John Thomas, Arkadelphia, Ark., for plaintiff.

Jim Patton, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

Before the court is the defendant's motion for summary judgment filed on February 28, 1991. Plaintiff responded to this motion on March 15, 1991. This matter is set for a trial to the court on April 22, 1991.

■ The defendant asserts that no facts are in dispute and that this is a matter of contract interpretation ripe for summary judgment. The defendant argues and the court agrees that a policy for medical coverage is a contract between the carrier and the insured that is governed by state con-

tract law. "In Arkansas, contracts of insurance are construed according to general contract principles. [citation omitted] Legal effect must be determined by considering the language of the entire policy and the object sought to be accomplished thereby." *American Cas. Co. of Reading, Pa. v. Federal S. & L.*, 704 F.Supp. 898, 900 (E.D.Ark.1989).

The plaintiff has pleaded that the terms of the insurance policy are ambiguous and that such ambiguities in a written contract prepared by an insurer are to be construed in the insured's favor. The central question is whether or not the medical expenses incurred during the birth of plaintiff's child on September 17, 1988, should be paid by the defendant.

Both parties agree that the plaintiff was an employee of Cook Chrysler, Plymouth Dodge ("Cook Chrysler") from December 15, 1985, until January 14, 1988. The parties agree that the plaintiff's wife April Thacker was covered as a dependent on the policy at least through the plaintiff's termination date. After his termination, the plaintiff did not convert his Blue Cross policy through his employer to a personal policy and the plaintiff did not take advantage of the COBRA insurance provisions (See Article XIII E. 1(a) and 2(b) of the Comprehensive Major Medical Group Benefit Certificate provided by Blue Cross and Blue Shield).

The defendant asserts that the plaintiff's medical coverage and that of plaintiff's dependents terminated with the termination of his employment with Cook Chrysler. The plaintiff asserts that because he and his spouse were insured through his employer, Cook Chrysler, at the time the child was conceived Blue Cross and Blue Shield ("Blue Cross") should pay medical benefits for the child's birth. Neither the plaintiff or Cook Chrysler paid any premiums to Blue Cross for medical coverage of the plaintiff and his dependents after his termination date (January 14, 1988).

## AMBIGUOUS CONTRACT LANGUAGE

■ Plaintiff relies on two provisions of the 21 page long Comprehensive Major

Medical Group Benefit Certificate ("Benefit Certificate") that Blue Cross provided to employees of Cook Chrysler who participated in the group medical coverage.

### Article III. C. (2). Limitations of Hospital Benefits

The Plan will pay for maternity care, obstetrical care, and complications of pregnancy only if conception occurs after the effective date of your coverage.... (page 7, Benefit Certificate)

### Article VI. C. Other Covered Medical Expenses

Physician services for pregnancy or complications relating there to are covered only if conception occurs after the effective date of your coverage. (page 9, Benefit Certificate)

These two provisions of the Benefit Certificate provide the alleged ambiguous language that the plaintiff wants construed to require defendant to pay plaintiff's claim. The plaintiff's theory is that the above listed contract provisions give the plaintiff and his dependents medical coverage for the costs of childbirth for a child that was conceived while premiums were being paid, but born long after the payments of premiums had ceased.

### CONTRACT INTERPRETATION

Contracts are to be construed to avoid absurdity. The plaintiff's interpretation of the contract must be reasonable for an ambiguity to exist. *See In re Olson*, 916 F.2d 481 (8th Cir.1990) [Minnesota case]. "[I]f a provision is susceptible to more than one equally reasonable construction, one which would justify recovery and one which would not, the ambiguity must be interpreted in favor of the insured." *American Cas. Co. of Reading, Pa.*, 704 F.Supp. at 900. After examining all of the provisions of the Benefit Certificate the court cannot find that the plaintiff's theory of contract interpretation is reasonable. The only reasonable construction is that plaintiff's insurance coverage ceased when he was terminated and his employer ceased to pay his insurance premiums.

"In order to determine whether a particular clause is ambiguous, the court must consider the clause in light of the entire policy. [citation omitted] If at all possible, the policy must be construed to give effect to all its provisions." *Norton v. St. Paul Fire and Marine Ins. Co.*, 902 F.2d 1355, 1358 (8th Cir.1990); *Continental Cas. Co. v. Didier*, 301 Ark. 159, 164–66, 783 S.W.2d 29, 32 (1990).

The court notes the following provisions contained in the Benefit Certificate are contrary to the plaintiff's interpretation of the contract.

### Article I. STATEMENT OF COVERAGE

D. Continuance of coverage under this Certificate shall be contingent upon receipt of premiums remitted in advance by your Employer on your behalf.... (page 1, Benefit Certificate)

### Article II. DEFINITIONS

E. *Covered Person* means an enrolled employee, upon whom premiums have been paid by the Member, and his eligible dependents, if any.... (page 2, Benefit Certificate).

### Article XIII. OTHER PROVISIONS

H. Upon termination of your employment, [Subject to the conditions of Article XIII., E. 1(a) and 2(b) ] cancellation of the Group Contract under which this Certificate was issued, or upon failure to remit premiums on your behalf by your employer, all benefits, except charges incurred prior to such events, shall cease.... (page 21, Benefit Certificate). [Art. XIII E. 1(a) and 2(b) provide for continuation of coverage after termination if the insured requests such coverage]

The terms of a contract for insurance coverage should be given their common, plain, ordinary and popular meaning. "Any intent to exclude coverage should be expressed in clear, unambiguous and unmistakable language." *American Cas. Co. of Reading, Pa.*, 704 F.Supp. at 900; *Milwaukee Insurance Company v. Wade*, 238 Ark. 565, 567, 383 S.W.2d 105, 106–107 (1964).

Looking at the plain language contained in Article I, II & XII the reoccurring theme emerges that the failure to remit the premiums for the policy leads to termination of the policy. The the only reasonable conclusion the court can reach is that the plaintiff's coverage and the coverage for his dependents effectively ceased on January 15, 1988, when his name was omitted from the invoice of participating employees that Cook Chrysler provided to Blue Cross. [See affidavit of Glenda Daulton, Customer Accounts Manager for Arkansas Blue Cross].

The defendant's motion for summary judgment will be granted.