United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3417

_____

| | | |
|---|---|---|
| Transcontinental Insurance Company and Continental Casualty Company, | * * * | |
| Appellees, | * * | |
| v. | * * * | Appeal from the United States District Court for the Western District of Arkansas. |
| Joe Edwards and Janice Edwards, Individually and as Guardian of Joe Edwards, | * * * * | |
| Appellants, and | * * | |
| Northwest Arkansas Bonded and Public Warehouse, Inc.; David Stills; Tanya Stills; and Industrial Space Center, Inc., | * * * * * | |
| Defendants. | * | |

_____

Submitted: March 12, 1998

Filed: March 26, 1998

_____

Before MORRIS SHEPPARD ARNOLD and FLOYD R. GIBSON, Circuit Judges, and NANGLE,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Transcontinental Insurance Company and Continental Casualty Company brought a declaratory judgment action in federal district court[2] to establish the extent of their liability to defend or indemnify various defendants in a state court tort action brought by David Stills. The district court granted summary judgment to the companies, holding that the insurance policies in question did not cover the acts of one defendant, Joe Edwards. The defendants appeal, and we affirm the order of the district court.

## I.

Defendants Joe and Janice Edwards are the only officers, directors, and shareholders of Northwest Arkansas Bonded and Public Warehouse, Inc. ("Northwest"), and Industrial Space Center, Inc. ("Industrial"). David Stills was, at the time relevant to this dispute, a practicing attorney in Fayetteville, Arkansas. On March 17, 1995, Mr. Edwards requested that Mr. Stills meet him at a warehouse owned by Northwest to discuss the installation of a sprinkler system at the warehouse. Mr. Stills met with Mr. Edwards at the warehouse, discussed the sprinkler installation, and traveled with Mr. Edwards in Mr. Edwards's truck to meet with local officials about the sprinkler system.

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

Rather than returning directly to the warehouse where their journeys began, Mr. Edwards drove instead to a secluded field near another warehouse owned by Northwest. Once in the field, Mr. Edwards stopped the truck, produced a handgun, and threatened to kill Mr. Stills. Maintaining control over Mr. Stills with his firearm, Mr. Edwards drove to the Edwardses' residence, where he forced Mr. Stills into the basement. Mr. Edwards then bound Mr. Stills with duct tape, neckties, belts, a barbell, and a ski rope. Mr. Edwards then apparently indicated that the reason for his unusual conduct was that he suspected that Mr. Stills was having an affair with Mr. Edwards's wife and supplying her with narcotics. The defendants also allege that Mr. Edwards was motivated to detain Mr. Stills by a belief that Mr. Stills was stealing from Mr. Edwards or his company.

Mr. Edwards subsequently left Mr. Stills at the house, announcing that he would bring Mrs. Edwards there to obtain an admission of the alleged affair. While Mr. Edwards was away, Mr. Stills managed to escape Mr. Edwards's home, secure the assistance of a passing motorist, and contact the police. Mr. Edwards was subsequently arrested and, shortly thereafter, involuntarily committed for the treatment of mental illness.

## II.

Approximately three months after this incident, Mr. Stills and his wife, Tanya Stills, brought a civil action in state court against the Edwardses, Northwest, and Industrial, alleging causes of action for outrage, assault and battery, and false imprisonment. Apparently, the complaint was amended twice, finally naming as a defendant only Janice Edwards, as guardian for Joe Edwards. The second amended complaint specified the causes of action as outrage, assault and battery, false imprisonment, and loss of consortium. It is on the basis of the second amended complaint that we assess any duty to defend or indemnify.

The district court determined that Joe Edwards's conduct at issue here was excluded from coverage by the terms of the relevant insurance policies. We agree. The policies under which Mr. Edwards claims coverage apply only to actions taken with respect to the conduct of the business. The defendants argue that the term "business" is undefined in the policies and is therefore ambiguous, and thus must be interpreted in favor of the insured.

While we agree that ambiguity in an insurance contract should be resolved in favor of the insured, *Norton v. St. Paul Fire and Marine Ins. Co.*, 902 F.2d 1355, 1357-58 (8th Cir. 1990), we are also mindful that "when the contract is clear, it must be interpreted in accordance with the plain meaning of its words; a word should be given its obvious meaning; and insurance coverage should not be extended to cover a risk for which a premium has not been collected." *General Agents Ins. Co. of America v. People's Bank and Trust Co.*, 854 S.W.2d 368, 369 (Ark. Ct. App. 1993). The phrase "conduct of a business" is not without meaning in a policy simply because it is not expressly defined within the document. In interpreting a contract, the court should use a commonsense approach and should give effect to the words used as they would be generally understood in their ordinary sense. *Commercial Union Ins. Cos. v. Sky, Inc.*, 810 F. Supp. 249, 252 (W.D. Ark. 1992).

The defendants advance two arguments to explain how the conduct at issue might constitute actions taken with respect to the conduct of Mr. Edwards's business. We believe that these proposed constructions are not reasonable ones, and we agree with the district court's conclusion that one cannot reasonably construe the phrase "conduct of a business" to include Mr. Edwards's conduct.

The defendants first point to the business conducted by Mr. Edwards and Mr. Stills immediately prior to Mr. Edwards's pulling out his gun. While it is true that Mr. Edwards conducted business immediately prior to forcibly detaining Mr. Stills, that

fact can hardly serve to make the forcible detention itself part of the conduct of Mr. Edwards's business.

The defendants also assert that Mr. Edwards was acting with respect to the conduct of his business because he believed that Mr. Stills was stealing money from Mr. Edwards and Mr. Edwards's company. Indeed, the defendants contend in their brief that Mr. Edwards "was trying to protect his business." It may be that the relevant policy would provide coverage, say, to a shopkeeper who stopped a customer and requested a return of something that he or she believed was stolen, actions that under appropriate circumstances are tortious. Here, however, the false imprisonment was unrelated to preventing potential theft or even to catching a thief in the act of stealing. Assuming for argument purposes, however, that Mr. Stills had been stealing from the company, Mr. Edwards could not rationally expect to protect his business from that theft by forcibly taking Mr. Stills to the basement of a house and leaving him there.

III.

The district court also found that the insurance policies did not provide coverage here because the insurance companies could not reasonably foresee Mr. Edwards's conduct and because the "intentional act" exclusion in the contracts applied. Having already decided that Mr. Edwards's actions are outside the scope of the commercial comprehensive general liability policies in question, we find no need to address these additional points here.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-