Adella M. SMITH, Plaintiff-Appellee,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY of the United States, a New York Corporation, Defendant-Appellant.

No. 78–1160.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 10, 1979.

Decided Feb. 4, 1980.

John E. Stanfield, of Smith Stanfield & Scott, Laramie, Wyo., for plaintiff-appellee.

Arthur T. Hanscum, of Pence & Macmillan, Laramie, Wyo., for defendant-appellant.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and BOHANON, District Judge *.

BOHANON, District Judge.

Appellant, The Equitable Life Assurance Society of the United States, seeks reversal of a district court judgment awarding interest on monies due appellee under a disputed insurance claim and an attorney's fee incurred in pursuing such claim. We affirm.

Appellee, Adella M. Smith, was the beneficiary of a group life insurance policy issued by appellant as to certain employees of the State of Wyoming, including appellee's husband ("the insured").

* Of the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

The insured was shot and killed on November 14, 1976, near Pinedale, Wyoming, during a property line altercation with a neighbor. Appellant did not acquiesce to appellee's claim for $20,000 in benefits payable in case of death "caused exclusively by external, violent and accidental means," until December, 1977.

On February 22, 1977, Equitable informed appellee of its decision to continue to investigate the insured's death before deciding if accidental death benefits were due. Three times in the next two months Equitable informed appellee's counsel that insufficient factual evidence existed to resolve the claim. Appellee's counsel unsuccessfully demanded payment twice and then filed suit in Wyoming state court, which was subsequently removed by appellant to federal district court. Pending disposition of murder charges against the insured's slayer, Equitable continued to forestall the claim's resolution. Following the accused man's acquittal, and their review of the transcript from his trial, Equitable disbursed the controverted benefits plus 5½ percent interest thereon, one week before appellee's claim was scheduled for trial. Appellee then sought, and was awarded, $6,000 in attorney's fees and an additional 4½ percent interest on the $20,000 in accidental death benefits.

Wyoming law, apposite herein, allows attorney's fees and 10 percent interest on judgments for withheld insurance policy benefits, where the insurer's refusal to pay was unreasonable or without cause. Wyoming Statutes, § 26.1–328.1 (1957, as amended). The trial court's assessment of 4½ percent interest, together with the 5½ percent interest Equitable had previously agreed to, provided appellee with 10 percent interest per annum for the period of time she had been denied her $20,000 claim.

Equitable asserts that it never refused appellee's claim, but merely delayed making a determination until adequate information could be gathered. In any event, Equitable argues, since the relevant statute provides for assessment of attorneys' fees and 10 percent interest only "if it is determined that the company has refused to pay the full amount of a loss covered by the policy and that the refusal is unreasonable or without cause," Equitable's payment previous to trial terminated any prior refusal and rendered the statute's sanctions inapplicable at the time they were assessed. Equitable contends that the statute involved is penal in nature, and should be construed narrowly and in favor of the insurer.

Wyoming law requires an insurer to either accept or reject life insurance claims within 45 days of notice and proof of loss. Wyoming Statutes, § 26.1–328.1 (1957, as amended). Appellee filed her claim in early January, 1977. Equitable never alleged defective notice or inadequate proof of loss.

■ The trial court held that Equitable was obligated to decide appellee's claim within 45 days of receipt thereof, and that its failure to do so constituted a refusal to pay. Absent clear error, we defer to the trial court's interpretation of the state law of its district, and here we concur with the trial court's analysis. See *Teague v. Grand River Dam Authority*, 425 F.2d 130 (10th Cir. 1970). Any other interpretation would emasculate the statute's plain and simple requirements and would defeat its intent to assist beneficiaries by expediting the resolution of claims and providing redress for insurers' wrongful refusals to pay. See *Life & Casualty Insurance Co. of Tennessee v. McCray*, 291 U.S. 566, 54 S.Ct. 482, 78 L.Ed. 987 (1934).

Similarly, Equitable's argument that the voluntary termination of an insurer's refusal to pay forecloses the court's jurisdiction to assess attorney's fees and interest is meritless. The statute's requirement that claims must be determined within 45 days of receipt must be viewed together with its conferral of attorney's fees and interest where payment is wrongfully refused. One provision delineates an obligation and the other specifies, *inter alia*, the consequences of disregarding such obligation. Equitable's interpretation would effectively allow insurers to ignore the 45 day requirement and merely determine pending claims any time before trial.

Laws assessing damages and attorney's fees against insurers found to have wrongfully withheld benefits are frequently held to be penal in nature and subject to strict construction. See 44 Am.Jur.2d, Insurance § 1798 and citations therein. However, such a rubric fails to distinguish between provisions intended to penalize an insurer for wrongdoing and those whose purpose is to compensate a beneficiary for actual loss suffered. Statutory provisions allowing recovery of expenses incurred in pursuing a just and reasonable claim are not penal, but remedial or compensatory, in that actual loss is at issue, traceable directly to the insurer's improper conduct. Thus, statutes awarding attorney's fees to successful insurance claimants are properly considered compensatory, not penal, and should not be strictly construed. *Wolf v. Mutual Benefit Health and Accident Ass'n.*, 188 Kan. 694, 366 P.2d 219 (1961); *Hagey v. Massachusetts Bonding & Ins. Co.*, 169 Or. 132, 127 P.2d 346 (1942). These statutes seek to prevent insurance benefits from unjustly being consumed by litigation costs and are designed to make the beneficiary whole rather than to punish the insurer. Regardless, based on the facts herein and the statute's clear language, strict or ordinary construction would not vary the result.

Appellant also challenges the sufficiency of the evidence underlying the trial court's findings as to Equitable's unreasonableness and the amount of the attorney's fee due.

Reversal of a trial court's finding is appropriate only if clearly erroneous under the evidence. Rule 52, Federal Rules of Civil Procedure; *Equitable Life Assurance Society of U. S. v. Timmons*, 287 F.2d 209 (6th Cir. 1961); *Hamilton v. Miller*, 477 F.2d 908 (10th Cir. 1973). It is important to remember that, "[t]he trial judge who heard and saw the witnesses and felt the pulse beat of the lawsuit is, to be sure, the first and best judge of the weight and value to be given to all of the evidence . . . ." *Cundick v. Broadbent*, 383 F.2d 157 (10th Cir. 1967). And it is the trial judge who determines the credibility of witnesses. *Wood v. Western Beef Factory, Inc.*, 378 F.2d 96 (10th Cir. 1967).

Equitable asserts that its delay was reasonable due to uncertainty that the insured's shooting death was "accidental" within the policy's meaning.

The "accidental" nature of the death is to be determined, of course, from the perspective of the insured rather than that of the one who killed him. *Guillory v. Aetna Life Ins. Co.*, Tex.Civ.App., 541 S.W. 883 (1976). Generally, the intentional killing of an insured during a fight is deemed "accidental" where the insured did not provoke such and was not the aggressor. See *King v. State Farm Life Insurance Company*, 448 F.2d 597 (8th Cir. 1971). Even where the altercation is initiated by the insured, his resultant death has been termed "accidental" if it were neither reasonably foreseeable, nor the likely consequence of his conduct. *Macklin v. Commonwealth Life and Accident Co.*, 121 Ill. App.2d 119, 257 N.E.2d 256 (1970). The critical consideration is the extent to which the fatal character of the danger was reasonably foreseeable and avoidable. See *Estate of Wade v. Continental Insurance Co.*, 514 F.2d 304 (8th Cir. 1975).

In a report dated January 25, 1977, Equitable received the results of its investigator's inquiry into the insured's death, which contained the sheriff's and coroner's reports, a narrative of the material circumstances surrounding the shooting incident, and the conclusion that: "There is no evidence to support the possibility that the deceased was in any way the aggressor in this instance." From that point Equitable delayed payment almost a full year. It insisted on awaiting a trial of uncertain relevance, and then did not attend such but chose to review the transcript thereof, which resulted in a delay of several more months.

Based on the same factual information which was available the preceding January, and after appellee had incurred considerable expense in preparing her claim, Equitable admitted liability one week prior to the trial thereof. We cannot fairly say that the

trial court's finding as to Equitable's unreasonable conduct was clearly erroneous.

The attorney's fee awarded herein came within the court's discretion. *Bruegger v. National Old Line Ins. Co.*, 529 F.2d 869 (10th Cir. 1976). This is a factual question to be decided upon the evidence and circumstances in each case. Relevant considerations include the ability and quality of the attorney, the kind and complexity of the matter, the work actually performed and the manner in which it was done, the results attained and the customary fee in that locale for similar services. *Greenough v. Prairie Dog Ranch Inc.*, Wyo., 531 P.2d 499 (1975). The court's determination was founded on an extensive personal familiarity with the case, and much evidence of record assisted the trial judge in his evaluation. No summary judgment was awarded and each party was allowed full opportunity to present all relevant evidence. In determining such fee, the trial court was entitled to apply its own knowledge and professional experience, including its assessment of the contingent fee contract between appellee and her counsel. *Service v. Pyramid Life Insurance Company*, 201 Kan. 196, 440 P.2d 944 (1968). We find no abuse of court discretion.

Appellee seeks an additional award for attorney's fees incurred in this appeal. Such request, if granted, would require evidence as to the appropriate dollar amount due. The judgment herein is affirmed and the case remanded for disposition of appellee's further claim for fees.