**SILVERBALL AMUSEMENT, INC., Plaintiff,**

v.

**UTAH HOME FIRE INSURANCE COMPANY, Defendant.**

No. 93–2043.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Jan. 24, 1994.

Gregory G. Smith of Pryor, Barry, Smith, Karber & Alford, Fort Smith, AR, for plaintiff.

Randolph Jackson of Jones, Gilbreath, Jackson & Moll, Fort Smith, AR, and John W. Anderson of Hall, Estill, Hardwick, Gable, Golden, Nelson, Tulsa, OK, for defendant.

## MEMORANDUM OPINION AND ORDER

WILSON, District Judge.

### INTRODUCTION

This case involves issues that have been hotly debated throughout the country, and courts have arrived at divergent conclusions regarding some of the relevant questions. The case deals with issues of negligent hiring and supervision, sexual abuse, and insurance law principles. Given the controversies surrounding some of these matters, the court will provide an analysis of the pertinent issues.

SYLLABUS
    I.   FACTS ..................................................... 2
   II.  SUMMARY JUDGMENT ................................... 4
  III.  COVERAGE OF THE INSURANCE POLICY ............... 5
  IV.  POLICY'S PROVISION CONCERNING VIOLATION OF CRIMINAL STATUTES .......................................... 14
   V.  THE SPLIT IN THE AUTHORITIES CONCERNING NEGLIGENT HIRING CASES ........................................ 17
  VI.  CONCLUSION ........................................... 31
 VII.  PUNITIVE DAMAGES, ATTORNEY'S FEES, AND THE STATUTORY PENALTY ............................................ 31
 VII.  JUDGMENT ............................................. 33

### I. FACTS

Currently before the court are summary judgment motions filed by the plaintiff, Silverball Amusement, Inc., and the defendant, Utah Home Fire Insurance Company (Utah Home) in a declaratory judgment action regarding an insurance policy. The following facts are not in dispute:

Plaintiff is an Arkansas corporation with its principal place of business in Fort Smith, and defendant is a Utah corporation that has contracted to insure persons, property and risk located in Arkansas. Defendant issued to plaintiff a commercial liability policy that provided coverage from Dec. 26, 1990 to Dec. 26, 1991. The policy provided that Utah "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.... This insurance applies only to 'bodily injury' or 'property damage' which occurs during the policy period. The bodily injury or property damage must be caused by an occurrence." The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general and harmful conditions." The policy provided that "we will have the right and duty to defend any 'suit' for those damages," but it excluded coverage for injury or damage "expected or intended from the standpoint of the insured."

On Feb. 14, 1991, during the policy's coverage period, Wesley Emerson, an employee of Silverball, molested Jessica Dawn Cole, 9, on the plaintiff's business premises. This incident took place while Emerson was engaged in his work for Silverball. Based on this incident, a lawsuit was filed against Silverball on Dec. 9, 1992 in the Circuit Court of Sebastian County, Arkansas by Sandra J. Cole, as guardian, custodial parent and next friend of

Jessica Dawn Cole; Cole alleged in her complaint that Silverball knew or should have known at the time it hired Emerson that he had several felony convictions for burglary, armed robbery, robbery by assault, and other violent crimes, and therefore should not have been employed at a video store where children frequently came to play the machines. An officer of Silverball named Kenneth Mahaffey hired Emerson, who is Mahaffey's brother-in-law. In a criminal case arising out of the incident, Emerson subsequently entered a guilty plea to a charge of First Degree Sexual Abuse, and he was sentenced to prison.

Ms. Cole's complaint in the civil case against Silverball alleged that "Had it not been for the negligence of Silverball Amusement, Inc. in employing Wesley S. Emerson, the harm to and damages of Jessica Dawn Cole for which the plaintiff claims herein would not have been incurred." Plaintiff alleged damages exceeding $50,000. The complaint does not allege that Silverball committed any intentional conduct, and it does not allege that Silverball is liable under a theory of respondeat superior. Silverball does not seek coverage for Emerson, but is seeking coverage only for itself regarding Ms. Cole's claim that Silverball was negligent in hiring Mr. Emerson.

Utah Home eventually informed Silverball that it was denying coverage under the policy and based its denial on the exclusion for intentional acts by the insured, emphasizing that Emerson's act of molestation was intentional as a matter of Arkansas law. Silverball responded by bringing this action in state court, requesting a declaratory judgment that Cole's claim is covered by the policy Utah issued to Silverball, and that the defendant is required to provide a defense to that lawsuit. Silverball also prays for attorney's fees and costs incurred in defending Ms. Cole's lawsuit and for any amount in either a judgment or a settlement in that lawsuit; and it asks for the statutory penalty and attorney's fees authorized under A.C.A. 23–79–209 (discussed, infra.) Utah Home then removed the action to this court on the basis of diversity of citizenship. As stated above, both parties seek summary judgment.

## II.  SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.1987); Fed. R.Civ.P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 [106 S.Ct. 2505, 91 L.Ed.2d 202] (1986).

The Eighth Circuit has set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir.1988):

> The burden on the party moving for summary judgment is only to demonstrate, i.e., "to point out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted. *Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273–274 (8th Cir. 1988)).

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." The Supreme Court has emphasized that Rule 56 must be construed with due regard not only for the rights of people asserting claims and defenses "that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.  COVERAGE OF THE INSURANCE POLICY

Under the policy, Utah Home agreed to pay the sums that the plaintiff became legally obligated to pay as damages resulting from injuries sustained by a third party on Silverball's business premises; defendant also agreed to provide a legal defense to lawsuits seeking damages as a result of the injuries. The insurance would apply only if the injuries were caused by an "occurrence"—basically defined as an "accident," as noted supra—taking place on the covered territory during the coverage period. There is no coverage for injuries or damages "expected or intended from the standpoint of the insured." It is undisputed that the molestation was committed by a Silverball employee during the covered period on Silverball's premises. Thus, it becomes crucial to focus on the exclusionary clause for intentional acts.

It is clear that sexual molestation is an intentional act as a matter of Arkansas law. *CNA Insurance Company v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689 (1984). Defendant contends that *McGinnis* entitles Utah Home to a summary judgment in its favor. *McGinnis,* however, involved different issues. In *McGinnis,* a stepfather had sexually abused his stepdaughter for 10 years until he was arrested, convicted, and sent to the penitentiary. *Id.* at 92, 666 S.W.2d 689. The stepfather, McGinnis, contended that he had not intended any harm to his stepdaughter, and a psychologist testified that males who are involved in such relationships do not expect or intend that the females will suffer any injury. *Id.* McGinnis' homeowners' insurance policy obligated CNA to defend personal injury suits against McGinnis and pay any judgment against him, but an exception excluded coverage for injuries "expected or intended" by the insured. The Arkansas Supreme Court held that "The test is what a plain ordinary person would expect and intend to result from a mature man's debauching his six-year-old stepdaughter and continuing to do so for years.... For a stepfather in such a situation to claim that he did not expect or intend to cause injury, flies in the face of all reason, common sense and experience." *Id.* at 93, 666 S.W.2d 689. This case differs from *McGinnis,* for unlike Mr. McGinnis, Silverball does not argue that sexual abuse could be an unintentional harm. Silverball acknowledges that *McGinnis* would be controlling if Ms. Cole had filed suit against the defendant's former employee, Mr. Emerson, and Emerson had sought coverage under Utah's policy. However, Ms. Cole did not allege any intentional conduct against Silverball. Rather, Cole's complaint alleged that the proximate cause of the harm to Jessica Cole was Silverball's negligence in hiring Emerson. Thus, there were two events involved: Silverball's hiring, which was negligent; and Emerson's molestation, which was intentional.

Defendant also relies on *Aetna Casualty and Surety Company v. American Manufacturers Mutual Insurance Company,* 261 Ark. 326, 547 S.W.2d 757 (1977) to support its argument that there is no coverage. In *Aetna,* a homeowner was sued for having negligently entrusted a minibike to a minor child who rode the bike along a neighborhood sidewalk and injured another child. The court found that there was no coverage, citing an exclusionary clause that stated: "There is no coverage for an accident arising out of the ownership, maintenance, operation, use, loading or unloading of: Any recreational motor vehicle owned by any insured, if the bodily injury or property damage occurs away from the residence premises ..." *Aetna,* at 327, 547 S.W.2d 758. In the case at bar, defendant emphasizes the *Aetna* court's statement that "The argument that the 'negligent entrustment' rather than the 'use' of the minibike, is the negligent act ignores the clear

language of the exclusionary clause." (Utah Home's reply to Silverball's brief in opposition to Utah Home's cross-motion for summary judgment). However, defendant's reliance on *Aetna* is misplaced, for the exclusionary clause in that case clearly differs from the exclusionary clause in this case. The policy in *Aetna* excluded coverage for injuries arising from the use of a recreational motor vehicle away from the insured's premises, regardless of how the injury occurred. *Aetna* might be apposite if the exclusion in Utah Home's policy excluded injury from an intentional act regardless of how it occurred, or regardless of who committed the act, but the exclusion is not that broad. Utah Home's policy only excludes injury arising from an act "intended or expected from the standpoint of the insured." Defendant's policy contains a "Separation of Insureds" provision that states:

> Except with respect to the limits of insurance, and any rights or duties specifically assigned in this coverage part to the first Named Insured, this insurance applies:
>
> (a) As if each named Insured were the only named Insured: and
>
> (b) Separately to each Insured against whom claim is made or 'suit' is brought.

Silverball is the named insured. An employee acting within the scope of his employment "is also an insured," according to the policy. Plaintiff denies that Emerson was acting within the scope of his employment when he molested Jessica Cole, but even assuming that he was acting as an employee and thus would fall into category (b) above as "an insured," the insurance would still apply separately to each insured against whom claim is made or 'suit' is brought." Because of this provision, Silverball's acts—not Emerson's—determine whether there is a duty to defend or provide coverage in the Cole suit against Silverball; and the only wrongful acts alleged by Ms. Cole were the negligent hiring and supervision of Emerson.

Moreover, defendant interprets the *Aetna* opinion as having concluded that the insured's acts, not the allegations of the pleadings, control whether an insurer has a duty to defend or indemnify an insured under its policy. This contention confuses the issue, partly because Utah Home defines "the insured's acts" as the acts of Emerson. In addition, the negligent acts of hiring and supervision in this case are identical to the acts alleged in the Cole complaint. In making the assertion that the general rule is that "the insured's acts, not the allegations of the pleadings" control insurer's duty to defend or indemnify, Utah Home was offering its own interpretation of what *Aetna* means. In fact, the *Aetna* court was making its ruling in the context of an exceedingly clear and specific exclusion from coverage regarding any accidents on motor vehicles away from the insured's premises. The Arkansas Supreme Court has explicitly held that "Our general rule is that the insurer's duty to defend is determined from the pleadings." *Mattson v. St. Paul Title Company of the South,* 277 Ark. 290, 641 S.W.2d 16 (1982).

This general rule has been stated in numerous Arkansas cases; for example, the Supreme Court has emphasized that "It is the allegations made against the insured— however groundless, false or fraudulent such allegations may be—that determine the duty of the insurer to defend the litigation against its insured." *Equity Mutual Insurance Company v. Southern Ice Company,* 232 Ark. 41, 334 S.W.2d 688 (1960). (The allegations in the case at bar are obviously not groundless or fraudulent, since Emerson was hired by Silverball and he entered a guilty plea to sexual abuse in the criminal case, as noted supra.) In a case dealing with Arkansas law, the Eighth Circuit held that an insurer had an obligation to defend a lawsuit brought against its insured if the cause of action was within the policy's coverage, and this obligation "is determined by the allegations of the complaint against the insured ..." *Carter v. Aetna Casualty and Surety Company,* 473 F.2d 1071 (1973) (citing *Equity Mutual Insurance Company,* 232 Ark. at 49, 334 S.W.2d at 693.) Of course, the Utah Home policy's coverage would apply to a negligent act. If the general rule is applied in this case, it obviously leads to the conclusion that Utah Home must defend Silverball against the Cole lawsuit, since Cole alleged negligent hiring and supervision on the part

of Silverball and hence the policy's "intentional act" exclusion does not apply.

■ There are exceptions to the general rule that the complaint determines the duty to defend. Thus, it is essential in deciding the case at bar to determine whether it falls within one of the exceptions. The cases discussing these exceptions differ markedly, however, from *Utah Home*. One of these exceptions was discussed in *Smith v. St. Paul Guardian Insurance Company*, 622 F.Supp. 867 (W.D., Ark., 1985), a case dealing with Arkansas law. There, the court discussed an exception to the general rule based on an example regarding an insurance policy providing coverage for an assault and battery if committed by the insured to protect life or property:

> The duty to defend cannot be determined solely from the tort complaint in this case. "The duty to defend is broader than the duty to pay damages and the duty to defend arises where there is a possibility that the injury or damage may fall within the policy coverage." *Commercial Union Insurance Company of America v. Henshall*, 262 Ark. 117, 123, 553 S.W.2d 274, 277 (1977). If the duty to defend could be delineated solely by the allegations of the tort complaint, there would never be any duty to defend the insured in an action for assault and battery, for example, although there is coverage for such if committed to save a life or property, because few tort plaintiffs will allege in the complaint that they were assaulted by the insured while the insured was protecting a life or property. There would clearly be a duty to defend in such a case, however, as there is here, because there is a 'possibility that the injury or damage may fall within the policy coverage.'"

The example cited by the *Smith* court differs from Ms. Cole's straightforward complaint, which makes a clearcut allegation of negligent hiring and supervision. The facts at issue in *Smith* also differed from the Cole complaint; the complaint in *Smith* concerned alienation of affection and was unclear as to whether the insured intended that his actions result in the alleged alienation. *Smith*, 622 F.Supp. at 875. In *Utah Home*, there is no

issue as to whether Silverball's acts were intentional; they were clearly negligent (assuming the allegations of the complaint to be true), and there is far more than a "possibility that the injury or damage may fall within the policy coverage," *Henshall*, supra, 262 Ark. 117, 123, 553 S.W.2d 274, 277. The allegations fall within the policy coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" caused by an occurrence in the coverage territory during the covered period.

Another case involving an exception to the general rule also concerned an inability to determine the issues in the case strictly from the complaint: in *Employers Mutual Liability Insurance Co. of Wisconsin v. Puryear Wood Products Co.*, 247 Ark. 673, 447 S.W.2d 139 (1969), the court began by observing that the insurer's duty to defend "would normally be determined by the allegations in [the] complaint. However, that complaint alleges that the trailer was in the care, custody and control of Puryear, but it also alleges that the damage to the trailer was a result of the negligence of Puryear." There was a policy exclusion in that case regarding property damage to property in the care, custody or control of the insured, but it was unclear whether the property actually was in the insured's "care, custody or control." Since it would be possible to find that the loss was due to Puryear's negligence without also finding that the trailer was in its care, custody and control, the obligation to defend could not be determined solely from the complaint. *Puryear*, at 675, 447 S.W.2d 141.

Courts have decided myriad cases on this subject, with a wide variety of approaches regarding when to apply the general rule. *Utah Home* simply does not fall into any of the exceptions. In addition to the issues discussed in *Puryear* and *Smith*, the cases broadly fall into four categories. First, when an analysis of the pleadings leads to the conclusion that there is an obligation to defend, courts have generally applied the proposition that the nature of the claim alleged in the action against the insured determines that the insurer is obligated to defend; as Judge Learned Hand held, "it is the claim which determines the insurer's duty to de-

fend." *Lee v. Aetna Casualty & Surety Company,* 178 F.2d 750, 751 (2d Cir.1949); APPLEMAN, INSURANCE LAW AND PRACTICE, Vol. 7C, Section 4684, at 85–87 (1979; 1992 Supplement at 17); KEETON and WIDISS, INSURANCE LAW (2d Ed., 1988), at 1009. Two other major categories include: pleadings in which some of the claims involve tortious conduct within the policy's coverage; and false, fraudulent or groundless claims; in both of these categories the great weight of the authority is in favor of finding a duty to defend. *Id.*

In another major category of cases, the pleadings do not allege any claims within the coverage; in these cases there can sometimes be a duty to defend even if there is no coverage. Sometimes courts have decided cases based on the insured's reasonable expectations, if those are in conflict with clauses in insurance policy forms that are familiar to insurers, judges and lawyers, but not to the great majority of insurance purchasers. *See e.g., Providential Life Insurance Company v. Clem,* 240 Ark. 922, 403 S.W.2d 68 (1966); *Lawrence v. Providential Life Insurance Co.,* 238 Ark. 981, 385 S.W.2d 936 (1965). In other cases, if a third party complaint alleges that the insured's actions were intentional, the insured may contend that the injury was the result of an accident, and it should be given a reasonable opportunity to provide support for its contention; thus, the insurer must reasonably investigate such a situation. *See e.g., McGettrick v. Fidelity & Casualty Company of New York,* 264 F.2d 883 at 886 (2d Cir.1959). Finally, there cannot be a totally rigid adherence to determining the duty to defend by the allegations in the complaint, for such an inflexible rule could invite claimants to manipulate tort pleadings for reasons that are irrelevant to the merits of the tort actions. *See e.g., Aberle v. Karn,* 316 N.W.2d 779, 783 (N.D. 1982). There is no issue of manipulation of the tort pleadings in the case at bar.

The other significant categories in which courts have sometimes held for the insurer involved cases in which there is a dispute regarding the investigation into the event that precipitated the lawsuit; and cases in which the insurer should be given an opportunity to prove that the complaint was either contrary to the facts, or contained "surplusage" that set forth facts that brought the claim within the coverage but were not an essential basis of the tort claim or the events. Keeton, supra, at 1011. In *Utah Home,* there are no issues of "surplusage," no dispute regarding the insurer's investigation into the molestation, and no controversy as to whether the third party complaint was an accurate statement of the facts.

■ Defendant contends that there is no coverage because the policy applies only to injuries or damage caused by an occurrence, defined as an "accident, including continuous or repeated exposure to substantially the same general and harmful conditions." The policy does not define the word "accident." Under Arkansas rules of construction, the terms of an insurance policy are construed in favor of the insured and any ambiguity is resolved in favor of the insured. *Home Indemnity Company v. City of Marianna,* 291 Ark. 610, 727 S.W.2d 375 (1987); *Norton v. St. Paul Marine Fire and Marine Insurance Co.,* 902 F.2d 1355 (8th Cir.1990); *Ritter v. U.S. Fidelity & Guaranty Co.,* 573 F.2d 539 (8th Cir.1978). The Arkansas Supreme Court has emphasized that courts must interpret exclusions strictly and resolve all doubts in favor of the insured. *State Farm Mutual Automobile Insurance Co. v. Traylor,* 263 Ark. 92, 562 S.W.2d 595 (1978); *Security Ins. Co. v. Owen,* 252 Ark. 720, 480 S.W.2d 558 (1972). In construing an accident policy, the Supreme Court stated the basic principle that "if an injury occurs without the agency of the insured, it may be logically termed 'accidental,' even though it may be brought about designedly by another person." *Maloney v. Maryland Casualty Company,* 113 Ark. 174, 167 S.W. 845 (1914). The most recent definition followed by many courts states that "the act is an accident if it was unexpected or unanticipated from the standpoint of the insured." COUCH ON INSURANCE 2D, (Rev.Ed.) Section 41:14, at 20–21; *See e.g., Smith v. Equitable Life Assur. Soc.,* 614 F.2d 720 (10th Cir.1980); *Providence Life & Accident Insurance Co. v. Hanna,* 294 Ala 37, 311 So.2d 294 (1975). Similarly, another court observed: "The test of whether an injury is a result of an accident is to be

determined from the viewpoint of the insured and not from the viewpoint of the one that committed the act causing the injury." *Mohn v. American Casualty Co.*, 458 Pa. 576, 326 A.2d 346 (1974). Obviously, from the standpoint of Silverball, Emerson's acts were "unexpected or unanticipated." It would require a tortured interpretation of this case to decide that when Silverball hired Emerson it intended or expected that he would molest children.

### IV. POLICY'S PROVISION CONCERNING VIOLATION OF CRIMINAL STATUTES

■ Utah Home's policy contains an exclusion for willful violations of a penal statute "by or with consent of the insured." This provision refers to a violation "by or with consent of the insured," so that if "the insured" means Silverball and not Emerson—according to the "separation of insureds" clause—then Silverball certainly did not consent to the molestation. Defendant cites a 10th Circuit case, *All American Insurance Co. v. Burns*, 971 F.2d 438 (10th Cir.1992), which displayed a factual setting generally similar to *Utah Home*. However, *Burns* is not on point because it was interpreting Oklahoma, not Arkansas law, and the exclusion in that case differed from the exclusion in the Utah Home policy. In *Burns*, the policy excluded coverage for "personal injuries arising out of the willful violation of a penal statute ... committed by or with knowledge or consent of *any insured*." (emphasis added). *Burns* at 440. Utah Home's policy excluded coverage for "bodily injury or property damage expected or intended from the standpoint of *the insured*." In *Burns*, a volunteer bus driver for a church allegedly molested several children, whose parents then sued the church. The church sought coverage, but the 10th Circuit ruled that the driver was "an insured" and thus under the precise language of the exclusion there was no coverage for "any insured." The separation of insureds provision in *Utah Home* means that the acts of "the insured" are viewed independently of the acts of additional insureds. If Utah Home had wished to exclude coverage for all claims arising from all intentional acts regardless of who commit-

ted them, it could easily have drafted its policy to exclude coverage arising from the intentional act of "any" insured. It chose not to do so, and under the Arkansas rules of construction for insurance contracts, courts must especially interpret exclusions strictly and resolve all doubts in favor of the insured. *State Farm Mutual Automobile Insurance Co. v. Traylor*, 263 Ark. 92, 562 S.W.2d 595 (1978); *Security Ins. Co. v. Owen*, 252 Ark. 720, 480 S.W.2d 558 (1972).

An employer reading all the provisions of this policy as a whole would have reasonably expected that "the insured" would be covered from any injuries caused by the intentional act of an employee for which the employer had no knowledge and gave no consent. The Arkansas Supreme Court has accepted that one of the considerations in determining the scope of an insurer's obligation is "the insured's reasonable expectations" regarding the terms of the policy. *Providential Life Insurance Company v. Clem*, 240 Ark. 922, 403 S.W.2d 68 (1966); *Lawrence v. Providential Life Insurance Co.*, 238 Ark. 981, 385 S.W.2d 936 (1965). *See also Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

Even assuming, *arguendo*, that the "committed by or with consent of the insured" phrase could properly be construed as referring to Emerson's molestation and not Silverball's negligent hiring (and the court concludes that it should not be construed in that fashion), the defendant concedes that this provision is "not specifically applicable to Ms. Cole's claims." It is not applicable because this exclusion applies only to a "personal injury" claim, which under the policy is defined as an injury arising from a false arrest, malicious prosecution, wrongful eviction, slander, libel, or an invasion of privacy. The policy provides two different types of coverage, each one defined in separate sections of the policy and each section having its own separate exclusions: one coverage is for "personal injury," and one is for "bodily injury and property damage."

■ Defendant contends that because the policy contains a criminal violations exclusion for one type of coverage, Utah Home must

have intended to exclude claims arising from criminal acts from another type of coverage. Actually, the defendant's failure to include a criminal violation exclusion in the section on bodily injury coverage—after it had so explicitly provided a criminal violation exclusion in the "personal injury" coverage—could more logically be construed as revealing an intent to provide coverage in the bodily injury section. Again, any ambiguity regarding the criminal violation exclusion must be resolved in favor of Silverball. *Home Indemnity Company v. Marianna,* 291 Ark. 610, 727 S.W.2d 375 (1987). In other cases involving Arkansas law, the court held that if the insurer had intended to exclude coverage, it should have expressed that intent in "clear and unequivocal terms in its policy;" the rule under Arkansas law is that "Any intent to exclude coverage in an insurance policy should be expressed in clear and unambiguous language." *MFA Mutual Ins. Co. v. State Farm Mutual Ins. Co.,* 268 Ark. 746, 595 S.W.2d 706 (1980); *Norton v. St. Paul Fire and Insurance Co.,* 902 F.2d 1355 (8th Cir.1990); *Union Bankers Ins. Co. v. National Bank of Commerce,* 241 Ark. 554, 408 S.W.2d 898 (1966). In construing an insurance contract, a court must consider the specific clause under scrutiny in light of the entire policy as a whole. *Continental Casualty Co. v. Didier,* 301 Ark. 159, 783 S.W.2d 29 (1990). In this contract, the insurance company clearly intended for the two types of coverage to be distinct and different in some ways, since it carefully delineated the provisions applying to each in separate sections of the policy. If there is an exclusion in one section but not in another, the court cannot rewrite the contract to place exclusions in both sections, especially when the insurance company could have easily done so when it drafted the policy. As stated, there is no provision excluding willful violations of a criminal statute in the "bodily injury and property damage" coverage.

## V. THE SPLIT IN THE AUTHORITIES CONCERNING NEGLIGENT HIRING CASES

The court acknowledges that judges have arrived at different conclusions regarding negligent hiring and supervision cases in which sexual harassment or sexual abuse are involved. In *Commercial Union Insurance Companies v. Sky, Inc.,* 810 F.Supp. 249 (W.D.Ark.1992), the United States District Court for the Western District of Arkansas ruled that a sexual harassment case involving negligent hiring (among other allegations) did not arise from an "occurrence." The insurance policy in that case was apparently similar in most respects to Utah Home's in the instant case. This court respectfully differs from some of the conclusions reached by the court in *Sky.*

The facts in *Sky* were in many ways similar to those in *Utah Home:* Kimberly Cluck, a former employee of Sky, Inc., alleged that while she was employed there she was sexually harassed by another employee. She filed several claims, including one for negligent hiring and supervision, as well as other allegations of intentional conduct. Sky, Inc. requested that Commercial Union Insurance Companies provide a defense to Cluck's suit. Commercial then filed a declaratory action, asserting that it had no duty to defend because the harassment was intentional and not covered by its policy. *Id.,* at 250. The *Sky* court then correctly stated that the general rule in Arkansas "is that the pleadings against the insured determine the insurer's duty to defend." *Mattson, supra,* 641 S.W.2d at 18. However, Judge Waters concluded that Cluck's allegation in the complaint of negligent hiring did not determine the duty to defend, noting that in some cases there are exceptions to the general rule: "there can be situations where the duty to defend cannot be determined solely from the pleadings.... This court must, therefore, determine if a possibility of coverage exists, under the terms of Sky Inc.'s insurance policy with Commercial for liabilities incurred as the result of a sexual harassment action." *Id.* 810 F.Supp. at 251.

The *Sky* court then proceeds to cite more than a dozen cases holding that sexual molestation is intentional and excluded from insurance coverage as a matter of law. Among the cases that Judge Waters placed substantial reliance upon were *CNA v. McGinnis,* discussed supra, and *J.C. Penney Casualty Insurance Company v. M.K.,* 52 Cal.3d 1009,

278 Cal.Rptr. 64, 804 P.2d 689 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991). *J.C. Penney* was similar to *McGinnis*, for the victim filed the suit against the molester, who contended that he did not intend to harm the child. *J.C. Penney*, 804 P.2d at 691. In concluding that the insurance policy did not cover the sexual harassment in *Sky*, Judge Waters quotes the California Supreme Court's conclusion that "it strains the imagination to speculate how a pattern of sexual overtures and touching can be accidental.... the very notion of 'accidental' child molestation is implausible." *Sky*, 810 F.Supp. at 253. Such comments were relevant in the context of cases such as *McGinnis* or *J.C. Penney*, but since those cases have nothing to do with negligent hiring and supervision, they are simply not relevant to cases like *Utah Home*. The issue in *McGinnis* and *J.C. Penney* was whether sexual abuse was unintentional, a question that is not even contested by Silverball in *Utah Home*.

The *Sky* court also placed substantial reliance on *Sena v. Travelers Insurance Company*, 801 F.Supp. 471 (D.New Mexico, 1992), yet a close reading of this case reflects that it does not support Utah Home. The facts in *Sena* differed substantially from cases such as *Sky* or *Utah Home*, for the victim sued her employer for sexual harassment while she was working for him, but there was no issue of negligent hiring. Judge Mechem of the U.S. District Court in New Mexico based his decision on the allegations in plaintiff's complaint, holding that "I agree that plaintiff alleges intentional, rather than accidental acts. Summary judgment is granted on that basis." *Sena*, 801 F.Supp. at 473. The policy contained a provision similar to Utah Home's policy in the case at bar, stating that an "occurrence means an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The Named Insured was Urioste's M & M Cafe, with Mr. and Mrs. Urioste being individual insured persons with respect to conduct of the business. The plaintiff suggested that "the insured" means Urioste's M & M Cafe and Mrs. Urioste as well as Mr. Urioste, who entered into a settlement regarding the sexual harassment charges. As in *Utah Home*, there was a separation of insureds provision stating that the policy "applies separately to each Insured against whom claim is made or suit is brought." *Id.*, at 474. Judge Mechem explicitly stated that "Admittedly, if Ms. Sena had sued Mrs. Urioste for some negligence in connection with these events, Travelers would have incurred a separate duty to defend her." *Id.* If the *Sena* court's logic is applied to *Utah Home*, it should lead to the decision that there were two separate events and two separate conclusions regarding coverage: the insurance company does have a duty to defend the negligent action, but the coverage does not include the sexual harassment or sexual abuse acts, and there is no duty to defend for those intentional acts.

In *Sena*, there was no wrongdoing of any kind by Mrs. Urioste, so Ms. Sena had no choice but to sue Mr. Urioste. The court concluded that the policy's phrase "the Insured" was meant to refer to a specific insured, namely Mr. Urioste—the insured who was involved in the act that caused the injury. *Id.* Judge Mechem emphasized that "Mr. Urioste is 'the insured at issue here. The intentions or expectations of another insured on the policy are immaterial." *Id.* at 475. Applying this logic to *Utah Home*, Silverball is the insured at issue, and the intentions or expectations of Mr. Emerson are immaterial.

There are possible differences in the facts of *Sky* and *Utah Home* that may or may not shed some light as to why *Sky* was decided differently from the result this court reaches in *Utah Home*. Judge Waters does not refer to any "separation of insureds" provision in the policy in that case, and from reading the opinion it is not clear whether there was such a provision; if there was not, perhaps that may be relevant in explaining the outcome in *Sky*. There were no physical injuries in the sexual harassment of Ms. Cluck, leading the *Sky* court to conclude that there was no "bodily injury" under the policy; in *Utah Home*, Jessica Cole suffered physical injuries from the criminal sexual molestation, and there was no question of "bodily injury."

Courts have discussed the public policy debate underlying the issues in these cases; as the *Sena* court observed, "On the one hand, the exclusion for intentional acts seeks to deter deliberate wrongful conduct by holding the wrongdoer solely liable for the consequences of his actions ... On the other hand, liability insurance may be a victim's only recourse, especially in instances where the molester is incarcerated for his actions or, as in this case, files a petition in bankruptcy." *Sena*, at 476. As Judge Waters eloquently wrote in a similar vein regarding compensation of victims (in the context of a case involving alienation of affections), "Given a choice, this court should interpret the public policy of this state in such a manner as to further the availability of compensation for those who have been wronged rather than force a construction that will inure to the detriment of judgment-proof tortfeasors only marginally and in principle, while providing nothing to their victims." *Smith v. St. Paul Guardian Insurance Company*, 622 F.Supp. 867, 875 (W.D.Ark.1985). In *Utah Home*, however, the court is not faced with such a harsh set of choices as was Judge Mechem in *Sena*, because the sexual abuse was a criminal case in which the defendant has already been sentenced to prison; thus the goal of deterring the wrongdoer has already been fulfilled.

■ Despite his concern for the compensation of victims, Judge Mechem also stressed that "this court will not make a contract, but will only enforce the intent of the insured and insurer as manifested by the writing." *Sena*, 801 F.Supp. at 477. Judge Mechem correctly stated that the exclusion for intentional acts clearly applied in that case. It is certainly true that courts should not make contracts between the parties before them. The Arkansas Supreme Court has established fundamental principles for construction of insurance contracts. The terms of a policy are construed in favor of the insured and any ambiguity is resolved in favor of the insured, *Norton v. St. Paul Fire and Marine Ins.*, 902 F.2d 1355 (8th Cir.1990; 8th Circuit case involving Arkansas law), and a court is to strictly interpret exclusions and resolve all reasonable doubts in favor of the insured. *State Farm Mutual v. Traylor*, 263 Ark. 92, 562 S.W.2d 595 (1978). On the other hand, it is unnecessary to resort to the rules of construction if the terms are unambiguous, "and in such cases the policy will not be interpreted to bind the insurer to a risk which it plainly excluded and for which it was not paid." *Columbia Mutual Casualty Co. v. Coger*, 35 Ark.App. 85, 811 S.W.2d 345 (1991); *Baskette v. Union Life Insurance Co.*, 9 Ark.App. 34, 652 S.W.2d 635 (1983). The insurance contract in *Utah Home* excluded coverage for injuries "expected or intended from the standpoint of the insured" and thus clearly excluded Emerson's intentional act. But the policy clearly included negligent acts; apparently, Silverball may have been negligent in failing to take any proper precautions regarding the hiring and supervision of Emerson, but the Arkansas Supreme Court has ruled that "failure to take a proper or effective precaution does not prove intent.... And lacking such intent, the damage was accidental ..." *Continental Insurance Co. v. Hodges*, 259 Ark. 541, 534 S.W.2d 764 (1976) (quoting *Cross v. Zurich General Accident & Liability Ins. Co.*, 184 F.2d 609 (7th Cir.1950)).

The *Sky* decision relies heavily upon *Old Republic Ins. v. Comprehensive Health Care*, 786 F.Supp. 629 (N.D.Tex.1992); (See also Judge Waters' recent opinion, decided on Dec. 13, 1993, *Entertainment Innovators, Inc., v. Scottsdale Insurance Company*, 1993 WL 525132, 839 F.Supp. 654 (W.D.Ark., 1993). In *Old Republic*, some of the counts alleged negligent hiring and others alleged intentional acts. In that case, several female employees sued their former employer, Comprehensive Health Care Associates, (CHCA) Inc., as well as their former supervisor at CHCA. The *Old Republic* court held that even the negligent hiring was not covered because "each and every allegation arises out of the alleged acts of sexual harassment. Finding a separate and distinct duty to defend the employer would necessarily require proof of the underlying sexual harassment. The allegations are not mutually exclusive; rather, they are related and interdependent. Without the underlying sexual harassment there would have been no injury and obviously, no basis for a suit against the employer

for negligence." *Old Republic,* 786 F.Supp. at 631. Judge Waters reasoned similarly regarding the various allegations of Ms. Cluck in *Sky,* including negligent hiring as well as intentional allegations: "Each and every allegation made by plaintiff arises out of the alleged acts of sexual harassment. Her allegations are not mutually exclusive; they are related and interdependent. Without the underlying sexual harassment claim there would have been no alleged 'personal injury' and no basis for a suit against the employer for imprisonment, defamation, outrage or negligent supervision." *Sky,* 810 F.Supp. at 255.

One difference between *Utah Home* and the *Old Republic* and *Sky* cases is that the latter involved third party complaints in which negligent hiring was one among several counts, with the other counts including acts that were clearly intentional. *Utah Home,* on the other hand, involves only the negligent hiring and supervision issue. According to basic principles of insurance law, courts have generally held that the insurer is obligated to provide a defense whenever a third party's complaint includes at least one claim that is within the scope of the liability coverage, because the insured's liability may ultimately be predicated on that tortious act. *See e.g., Union Mutual Fire Insurance Company v. Inhabitants of the Town of Topsham,* 441 A.2d 1012 (Me.1982); *Nandorf, Inc. v. CNA Insurance Companies,* 134 Ill.App.3d 134, 88 Ill.Dec. 968, 479 N.E.2d 988 (1st Dist., Div. 1, 1985); KEETON, INSURANCE LAW, Section 9.3(a) at 1010, (1988). An exception to this rule obtains when an allegation in a third party's pleading sets forth "surplusage"—facts that would bring the claim within the scope of coverage, but those facts are not an essential basis of the tort claim or the factual events. In *Old Republic,* the negligence allegations were added to the end of a complaint that included numerous intentional acts, and if such negligence allegations involved manipulation of the tort pleadings as a device for involving an insurer, courts have held that there was no duty to defend such "surplusage." *See e.g., Burd v. Sussex Mutual Insurance Co.,* 56 N.J. 383, 267 A.2d 7 (1970); KEETON, supra, at 1011. No "surplusage" manipulation

of the pleading is involved in *Utah Home.* However, the courts in *Old Republic* and *Sky* also do not seem to have relied on a "surplusage" argument in coming to their decisions. The key to the *Old Republic* decision was apparently its argument that the allegations could not be divided into separate duties to defend CHCA and the employee who had allegedly committed the sexual harassment; rather, the court found that all of the behavior was intentional, for "without the underlying sexual harassment there would have been no injury and obviously, no basis for a suit against [CHCA] for negligence." *Old Republic,* 786 F.Supp. at 632. In the case at bar, Utah Home relies upon this logic, arguing that "but for Emerson's molestation, no cause of action for 'negligent hiring/supervision' could exist."

This court declines to follow the reasoning in the opinions of Judge Waters in *Sky* and the Texas U.S. District Court in *Old Republic.* First, this court adheres to the decisions of the Arkansas Supreme Court holding that "It is the allegations made against the insured ... that determine the duty of the insurer to defend the litigation against the insured." *See e.g., Equity Mutual,* 232 Ark. 41, 334 S.W.2d 688; *Mattson v. St. Paul Title Company of the South,* 277 Ark. 290, 641 S.W.2d 16 (1982). This court is in strong agreement with an opinion by Judge Reinhard for the Northern District of Illinois in *United States Fidelity & Guaranty Company v. Open Sesame Child Care Center,* 819 F.Supp. 756 (N.D.Illinois, W.D.1993), partly because of its incisive logic, but even more so because it interprets principles of Illinois insurance law that are similar to the relevant Arkansas insurance law. In Illinois, sexual abuse is intentional as a matter of law, just as in Arkansas. *McGinnis,* supra, 282 Ark. 90, 666 S.W.2d 689; *Open Sesame,* 819 F.Supp. at 759. Insurance contracts' exclusionary language will be construed most strongly against the insurer and liberally in favor of the insured. *Traylor,* 263 Ark. 92, 562 S.W.2d 595, supra; *Open Sesame,* 819 F.Supp. at 759. The general rule is that whether an insurer owes a duty to defend an insured is to be determined from the allegations of the complaint. *Mattson,* 277 Ark.

290, 641 S.W.2d 16, supra; *Open Sesame,* 819 F.Supp. at 758. In *Open Sesame,* an insurer brought a declaratory judgment action seeking a determination that it had no duty to defend the insured day-care center against an action brought by the mother of a child allegedly abused by a day-care center employee. The *Open Sesame* court emphasized that applying the rules of Illinois insurance law, it would examine the allegations in the complaint to determine the duty to defend. Since the complaint alleged negligence, the conduct was not intentional and there was coverage. *Open Sesame,* 819 F.Supp. at 760. The policy obligated the insurer to pay the sums the insured became legally obligated to pay as damages for injuries caused by an "occurrence," defined as an accident "neither expected nor intended from the standpoint of the insured," as in the Utah Home policy. The complaint included a count alleging negligent hiring, and the Court rejected the reasoning of *Old Republic* and *Sky:*

> The tort of negligent hiring is a well-recognized claim in Illinois and is brought against an employer for its negligent hiring of an employee who intentionally injures a third party. *See, e.g., Huber v. Seaton,* 186 Ill.App.3d 503, 134 Ill.Dec. 285, 542 N.E.2d 464 (2d Dist.1989). In refusing to separate the employer's alleged negligence from the employee's intentional conduct, the *Sky* and *Old Republic* courts impermissibly ignored the employer's independent acts which gave rise to the alleged tort. Consequently, in holding that the employee's intentional conduct places the insured's negligence outside the definition of "occurrence," the *Sky* and *Old Republic* courts read the exclusion too broadly. Courts assume the predominant purpose of an insurance policy is to provide coverage to the insured. *USF & G v. Specialty Coatings Co.,* 180 Ill.App.3d 378, 129 Ill. Dec. 306, 310, 535 N.E.2d 1071, 1075 (1st Dist.1989). Therefore, exclusionary language will be construed most strongly against the insurer and liberally in favor of the insured. *Goldblatt Bros. Inc., v. Home Indem. Co.,* 773 F.2d 121, 125 (7th Cir. 1985) This court finds the allegation of negligent hiring in the underlying complaint is an "occurrence" [from the standpoint of the employer] despite intentional conduct [by the employee].

Judge Reinhard has provided a cogent analysis of this widely debated issue. The ultimate effect of such opinions as *Sky* leads to a metamorphosis in which certain negligent actions are transformed by the court into intentional actions for the purposes of deciding negligent hiring cases involving sexual abuse. Such a decision effectively dissolves the distinction between intentional and negligent conduct, allowing the intentional act to devour the negligent act for the purpose of determining coverage. The correct method of analyzing this issue in cases with the factual setting and insurance policy provisions involved in *Utah Home* would deal with each act on its own merits and recognize that employers who make negligent hiring decisions clearly do not intend the employees to inflict harm.

The reasoning followed by Judge Reinhard and by this court has enjoyed support from the weight of authority. The court relies upon Arkansas law, as discussed supra, in deciding the case at bar; however, since the *Sky* court referred to *Old Republic, J.C. Penney,* and other decisions outside of Arkansas, the court will review other decisions that have supported the logic of *Open Sesame.*

In *American States Ins. Co. v. Borbor,* 826 F.2d 888 (9th Cir.1987), James Meacham was convicted of molesting several students at a nursery school that he and Isabel Meacham owned and operated. After the conviction several children and their parents sued the Meachams. Under California statute, "an insurer is not liable for a loss caused by the willful act of the insured," and this statute is a part of the insurance contract. *Borbor,* at 890. After deciding that Isabel Meacham "is a separate insured under the policy," the Ninth Circuit reversed the district court's holding for the insurer:

> With regard to the "innocence" of Isabel, the district court concluded that she was either "innocent as to James' wrongdoings, or merely negligent in her supervision." California Insurance Code 533 does not preclude insurance coverage for an "inno-

cent" insured under a policy of liability insurance. *Arenson [v. National Automobile & Casualty Ins. Co.]* 45 Cal.2d 81, 286 P.2d 816 (1955). Neither does Section 533 preclude insurance coverage for a negligent insured. Liability insurance policies are typically sold and purchased to provide indemnification for liability which may be imposed as a result of negligence. Moreover, California Code 533 expressly provides that an insurer is not exonerated by the negligence of the insured. *Borbor,* [826 F.2d] at 894–895.

The *Borbor* court analyzed the rationale of the fundamental insurance law principle that intentional acts are not covered by insurance policies: the wrongdoer should not profit from his own wrong, nor should he or she be indemnified against the effects of the wrongdoing. Hence, an insurer cannot contract to indemnify an insured against the civil consequences of the insured's willful criminal acts. This public policy is "justified by the assumption that such acts would be encouraged, or at least not dissuaded, if insurance were available to shift the financial burden of the loss from the wrongdoer to the insurer." *Id.* at 894. This public policy, however, does not apply when the wrongdoer is not helped and an insured who did not commit the wrong receives the protection of the insurance contract.

The Fourth Circuit utilized similar reasoning in its decision in *Town of Kimball v. Aetna Casualty and Surety Company,* 667 F.2d 439 (4th Cir.1981). The town of Kimball had allegedly negligently hired a police officer, who was later sued for maliciously beating a person he arrested. Both the town and the officer were named in the third party complaint. The insurance policy contained the standard clause against intentional acts, but Aetna maintained that it had no duty to defend the town because the suit alleged only an intentional tort. In concluding that Aetna misconceived the nature of the claims, the Fourth Circuit held that the company's obligation to defend the town must be determined by considering all the allegations of the complaint, which included "charges that the town knew of the officer's propensity for violence and negligently failed to supervise

him." *Town of Kimball,* 667 F.2d at 440. Thus, the pleadings would allow a jury to return a verdict against the town based on negligence, so Aetna must assume the defense. *Id.*

Another court similarly held that a city's liability insurance policy covered the claims against the city for negligent hiring and supervision of a police officer who shot the plaintiff. *Western World Insurance Co. v. Hartford Mutual Insurance Co.,* 600 F.Supp. 313 (D.Md.1984). Another U.S. District Court gave a similar ruling in a case involving gross negligence: a town was entitled to coverage on a claim that its constable intentionally killed the plaintiff's dogs. *Engsberg v. Town of Milford,* 597 F.Supp. 251, (W.D.Wis., 1984). "Clearly, the allegations of gross negligence," the court held, "if proved, fall within the coverage of the policy as leading to an occurrence and Tower's duty to defend the Town is thereby triggered." *Id.*

In *Interstate Fire & Casualty v. Portland Archdiocese,* 747 F.Supp. 618 (D.Or.1990), all the parties in the case conceded that a priest's alleged molestations of several students constituted an "occurrence" giving rise to insurance coverage for the Archdiocese. The only issue was whether each act of molestation was a separate occurrence, thereby requiring apportionment between two insurance companies that were involved. The U.S. District Court in Oregon held that the initial act of molestation triggered coverage and that subsequent acts of molestation were all part of the same "occurrence." *Portland Archdiocese,* 747 F.Supp. at 624.

Another U.S. District Court followed an analogous approach in *U.S. Fidelity & Guaranty v. Toward,* 734 F.Supp. 465 (S.D.Fla. 1990), in which James and Rosario Toward were accused of molesting some of the students at a school they owned. In that case, the insurer attempted to argue—just as Utah Home does in the case at bar in its misplaced reliance on *McGinnis*—that a state Supreme Court case (*Landis v. Allstate Insurance Co.,* 546 So.2d 1051 (Fla.1989)) holding that "An act of child molestation cannot be an accident" meant that there was no coverage. However, the U.S. District Court pointed out

that in *Landis*, the Florida Supreme Court had been addressing the issue of whether "a child molester can commit his misconduct without intending to injure the child." *Toward*, 734 F.Supp. at 467. In *Toward*, the District Court held that the molestations constituted an "occurrence" under the policy:

> Based on the allegations of the state complaints and the policy language, the term "occurrence" includes the claims of negligence in the state complaints. The key word in the definition is "accident."

> Surely the insurer cannot dispute that the term "accident" includes direct acts of negligence such as unreasonable care in supervising and hiring the school's employees. An accident is an unexpected occurrence not actually foreseen by the insured. There is no allegation in the state complaints that the defendants actually knew they were acting below the applicable standard of care. Moreover, even if the named state defendants were also involved in the acts of child molestation, it is not clear under the policy language that the molesters could not have also breached their duty of care in allowing others to molest. USF & G does have a policy exclusion for "personal injury … arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured." However, because the complaints do not allege facts sufficient to invoke this exclusion, the insurer cannot avoid its duty to defend under this provision. If the named defendants in the state action were molesting children but also negligently allowed others to molest the school's pupils, the exclusion would not apply and the acts of active negligence would constitute an "accident."

A final example addressed the issue of the insurer's separate duties to a corporation—Tots and Toddlers—and to employees Nancy and Robert Knighton. *Atlantic Employers v. Tots and Toddlers*, 239 N.J.Super. 276, 571 A.2d 300 (1990). The third party complaint alleged molestations by Robert Knighton, as well as both negligent and intentional conduct on the part of Nancy Knighton and the day care center. "While Robert Knighton is excluded from coverage, Nancy Knighton and the corporation may indeed have a right to coverage, irrespective of Robert's intentional acts." Citing *Burd v. Sussex Mutual Insurance Co.*, 56 N.J. 383, 267 A.2d 7 (1970), the New Jersey Supreme Court concluded that if either the corporation or Nancy were negligent in not reasonably conducting the day care center so as to prevent injuries to the children, coverage likely would be afforded. *Atlantic Employers*, 571 A.2d at 303.

The above cases from United States Courts of Appeals, U.S. District Courts, and state Supreme Courts are sufficient to demonstrate that such cases as *Open Sesame* reflect the strong weight of authority and the better reasoning in the opinions. Numerous like cases could also be discussed.[1]

## VI. CONCLUSION

Based on fundamental principles of Arkansas insurance law, an insurer must provide coverage and a legal defense to an insured where a complaint alleges that an employer was negligent in hiring and supervision of an employee who subsequently committed an intentional tort. An insurance policy would require an exceedingly precise exclusionary clause to avoid that fundamental principle, and there is no such clause in the instant case. There is no genuine issue of material fact remaining in this case. Emerson's molestation was intentional and hence not covered, but Ms. Cole's lawsuit alleged negligence against Silverball. The policy covers negligent acts. Therefore, Utah Home has a duty to defend and to pay damages incurred in the Cole lawsuit against Silverball. Silverball's motion for summary judgment is hereby granted concerning the duty to defend and to indemnify.

1. See also, *Commercial U. Assur. Companies v. Town of Derry*, 118 N.H. 469, 387 A.2d 1171 (1978); *State Sec. Ins. Co. v. Globe Auto Recycling*, 141 Ill.App.3d 133, 95 Ill.Dec. 539, 490 N.E.2d 12 (1st Dist.1986); *Albertson's Inc. v. Great S.W. Fire Ins.*, 83 Or.App. 527, 732 P.2d 916 (1987); *Edwards v. Akion*, 52 N.C.App. 688, 279 S.E.2d 894 (1981); "Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured," 31 ALR 4th 947 Section 27; "Insurance: Assault as an 'Accident,'" 72 ALR 3d 1090.

### VII. PUNITIVE DAMAGES, ATTORNEY'S FEES, AND THE STATUTORY PENALTY

 Punitive damages are generally not awarded for breach of a contract, because damages for breach of the contract are ordinarily restricted to the monetary loss and are determined by the sum needed to place the party in the position that would have been occupied had the contract been performed. Punitive damages are normally awarded only based upon outrageous breaches of a contractual duty, or "Where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime ..." PROSSER & KEETON, TORTS (5th ed., 1984), at 9. The insurer's breach of the contract was clearly based upon a good faith belief that the acts were not covered, and so Silverball's motion for punitive damages is denied.

In addition to attorney's fees, in Silverball's complaint it requested the statutory penalty under A.C.A. 23–79–208. Actually, in a declaratory judgment action, the awarding of attorney's fees is proper under A.C.A. 23–79–209, which does not provide for the 12% penalty set forth in A.C.A. 23–79–208. *Shelter Mutual Insurance Company v. Smith,* 300 Ark. 348, 779 S.W.2d 149 (1989). A.C.A. 23–79–209 states that "In all suits in which the judgment or decree of a court is against a life, fire, health, accident, or liability insurance company, either in a suit by it to cancel or lapse a policy ... or in a suit for declaratory judgment under the policy, ... the company shall also be liable to pay the holder of the policy all reasonable attorneys' fees for the defense or prosecution of the suit, as the case may be." The Supreme Court has held that A.C.A. 23–79–209 "specifically applies to declaratory judgment actions, and excludes the allowance of a penalty although providing for an award of attorney's fees." *Shelter Mutual,* 300 Ark. 348, 350, 779 S.W.2d 149.

Pursuant to A.C.A. 23–79–209 and the court's order of this date, Utah Home will defend Silverball in the Cole lawsuit, pay any damages that may be incurred therein based on the negligence allegations in the complaint, and it will reimburse Silverball for reasonable attorney's fees and costs of bringing this action for a declaratory judgment. If Silverball has incurred any reasonable attorney's fees and costs in defending against the Cole lawsuit up to this point in time, then Utah Home will reimburse Silverball for those fees and costs.

It is so ordered.

### JUDGMENT

Pursuant to the order filed in this matter, declaratory judgment is hereby rendered on behalf of plaintiff Silverball Amusement, Inc. All matters in this case having been resolved, the case is dismissed with prejudice.

It is so ordered.